MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2023 ME 31
Docket:        Was-22-284
Argued:        April 6, 2023
Decided:       May 23, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## THOMAS G. BONFANTI

CONNORS, J.

[¶1]  Thomas G. Bonfanti appeals from a judgment of conviction for three counts of intentional or knowing murder in violation of 17-A M.R.S. § 201(1)(A) (2023); one count of aggravated attempted murder (Class A) in violation of 17-A M.R.S. § 152-A(1)(A)-(B), (2) (2023); and one count of elevated aggravated assault (Class A) in violation of 17-A M.R.S. § 208-B(1)(A), (2) (2023), entered by the trial court (Washington County, *Mallonee, J.*) after a jury trial.  Bonfanti asserts that the trial court erred in admitting a statement that he made to police in which he identified the number and names of his victims, arguing that (1) the circumstances under which the statement was made do not bring it within the ambit of the public safety exception to *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) his ingestion of a large quantity of prescription

drugs rendered his statement involuntary. He also argues that the trial court committed obvious error by instructing the jury on the third-party-provocation exception to the use of deadly force when that instruction was not generated by the evidence. We affirm the judgment.

## I. BACKGROUND

[¶2] Viewing the evidence in the light most favorable to the jury's verdict, the record supports the following facts. *See State v. Hansley*, 2019 ME 35, ¶ 2, 203 A.3d 827.

[¶3] On the morning of February 3, 2020, Bonfanti went to visit his friend, Samuel Powers, who lived with his mother on Roque Bluffs Road in Jonesboro. Bonfanti and Powers were talking when Powers's mother left the house to run errands. Shortly thereafter, Bonfanti shot Powers in the back of the head.

[¶4] After shooting Powers, Bonfanti drove to the home of another friend, Jennifer Bryant-Flynn, who lived with her husband on Kennebec Road in Machias. Bonfanti wanted to give Bryant-Flynn "a piece of [his] mind." After being invited in the house, Bonfanti shot Bryant-Flynn in the head and took her dog.

[¶5] After shooting Bryant-Flynn, Bonfanti drove to the home of another

friend, Regina Long, who also lived on Kennebec Road in Machias. Long invited Bonfanti inside to have coffee with her and her boyfriend, Shawn Currey, whom Bonfanti had not met before. Long, Currey, and Bonfanti chatted for about ten to fifteen minutes at the kitchen table. When Long stood up to put her coffee cup in the sink, she heard Bonfanti "rustling around" in his coat. Bonfanti pulled out a gun, shot Long in the neck, and shot Currey in the neck and back. Bonfanti then shot Long in the face. After being shot a second time, Long fell to the floor and pretended to be dead. Bonfanti shot her a third time as she lay on the floor.

[¶6] After Bonfanti left, Long called 9-1-1. The call came into the dispatch center at 10:44 a.m. A police officer from the Washington County Sheriff's Office quickly arrived at the Long residence and found Long severely injured and Currey dead. Almost immediately after arriving, the officer was dispatched to the Powers residence while other officers remained on scene. Powers's mother had called 9-1-1 after returning home and finding her son dead, placing the call at 10:51 a.m. Before the officer reached the Powers residence, however, he was diverted to the American Legion in Machias. The bartender who worked there called 9-1-1 to report that Bonfanti was at that location and had claimed to have killed "seven or several people." The bartender placed the call at 11:05 a.m.

[¶7]   After the shootings, Bonfanti had gone to the American Legion, where he placed a wad of cash on the bar top and told one of the patrons, "This is for my cremation."  He also said that he "just snapped" and that he had killed several people.  The bartender overheard Bonfanti make these statements.  Bonfanti then took "a bunch of pills" and went outside to sit in his vehicle.  Another patron of the American Legion saw Bonfanti in the parking lot and walked over to speak to him.  Bonfanti told him that he was waiting for the police because he had "just killed some people."

[¶8]   Upon arriving at the American Legion, at 11:15 a.m., the officer arrested Bonfanti, placed him in handcuffs, and seated him in the police cruiser.  After being read his *Miranda* rights, Bonfanti invoked his right to remain silent, but the officer nevertheless asked Bonfanti the following questions:

Officer:    The only thing I'm looking for right now, Tom, is I just need to know how many victims we're looking for because apparently I'm getting mixed numbers?

Bonfanti:   Four.

Officer:    And that's it?

Bonfanti:   Yeah.

Officer:    And who would that be?

Bonfanti:   Uh, Jennifer Bryant.

Officer:     Okay.

Bonfanti:   Regina Hall.

Officer:     Okay.

Bonfanti:   Sam Powers.

Officer:     Sam Powers, yep.

Bonfanti:   Yeah, and the other one, I don't know his name.

Officer:     Don't know his name.  Okay, but there's no more than four?

Bonfanti:   No.

Officer:     Okay, all right.

[¶9]  The officer relayed to dispatch what Bonfanti had told him.  A few minutes later, the final 9-1-1 call was made when Bryant-Flynn's husband arrived home to find his wife dead.

[¶10]   In a five-day trial, Bonfanti personally delivered his opening statement and testified in his own defense that he had accidentally shot Powers and Bryant-Flynn and that he had shot Long and Currey in self-defense.  The jury, after deliberating for approximately two hours, returned a verdict of guilty on all counts.  The court sentenced Bonfanti to life imprisonment,[1] and Bonfanti

---

[1] The court entered a judgment on the jury's verdict and imposed concurrent sentences of life imprisonment for the murders and aggravated attempted murder.  The court also sentenced Bonfanti

timely appealed.  *See* 15 M.R.S. § 2115 (2023); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

**A.    Because there was overwhelming evidence of Bonfanti's guilt aside from his challenged statement, the error, if any, in admitting his statement was harmless beyond a reasonable doubt.**

[¶11]  Bonfanti argues on appeal that his statement to the officer should have been suppressed because (1) the public safety exception to *Miranda* did not permit admission of his statement and (2) his ingestion of a large quantity of prescription drugs "deprived him of his rationality and own free will to make voluntary statements."  Bonfanti invokes only the United States Constitution.

[¶12]  We need not address the merits of these arguments because were there any error in the trial court's admission of his statement, the error would be harmless beyond a reasonable doubt.  *See* M.R.U. Crim. P. 52(a); *State v. Johnson*, 2009 ME 103, ¶ 18, 982 A.2d 320 ("For errors involving constitutional rights, a reviewing court conducting a harmless error analysis must be satisfied that the record as a whole demonstrates beyond a reasonable doubt that the error did not affect the substantial rights of the defendant or contribute to the verdict obtained."); *City of Portland v. Jacobsky*, 496 A.2d 646, 648 (Me. 1985) ("[W]e avoid expressing opinions on constitutional questions when the issue

---

to a concurrent thirty-year term for the elevated aggravated assault.  The court ordered Bonfanti to pay $3,181 as restitution to the Victims' Compensation Program.

before us on appeal may be otherwise resolved . . . ."); *see also Arizona v. Fulminante*, 499 U.S. 279, 295 (1991) (reviewing for harmless error the admission of an involuntary confession at trial).

[¶13]  As noted in the factual summary above, Bonfanti's statement was limited, identifying only the number and names of the victims; the statement was consistent with his defense that he had shot the victims;[2] and the evidence of his guilt irrespective of his statement was overwhelming, including that Bonfanti was the last person seen with Powers before Powers was murdered, Bryant-Flynn's dog was in Bonfanti's vehicle when he was arrested, Long told the 9-1-1 operator and the officer that Bonfanti had shot her and Currey, Long testified to the same at trial, the gun that was used in the murders was found in Bonfanti's vehicle, Bonfanti's DNA was on the gun, and three witnesses from the American Legion heard Bonfanti admit to shooting several people.

**B.**    **Given the jury instructions as a whole, the trial court did not commit obvious error by reciting a portion of the self-defense statute that was not generated by the evidence.**

[¶14]   Relying on *State v. Daley*, 440 A.2d 1053 (Me. 1982), Bonfanti argues that the trial court committed obvious error by instructing the jury on the third-party-provocation exception to the justified use of deadly force when

---

[2]  Bonfanti did not claim until oral argument before us that he would have presented his defense differently if the statement had been suppressed.

that exception was not generated by the evidence. *See* 17-A M.R.S. § 108(2)(C)(2) (2023). Bonfanti asserts that because he "conceded the charges" and rested his defense, at least in part, on the justification of self-defense, the error was highly prejudicial.[3]

[¶15] Because Bonfanti did not object to the alleged error at trial, we review for obvious error. *See* M.R.U. Crim. P. 52(b); *State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147. "For an error or defect to be obvious for purposes of Rule 52(b), there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

[¶16] Title 17-A M.R.S. § 108(2) governs the use of deadly force in self-defense. Section 108(2)(A)(1) provides that a person is justified in using deadly force upon another when he reasonably believes such other person is about to use unlawful deadly force against him and he reasonably believes that

---

[3] Bonfanti also contends that the trial court "relieved the State of its obligation to disprove [his] defense beyond a reasonable doubt" and that the trial court did not inform the jury of "the exculpatory effect of self-defense." Contrary to Bonfanti's contentions, the trial court emphasized that the State—and not Bonfanti—had the burden of proving beyond a reasonable doubt that the crimes were not committed in self-defense, and the trial court expressly instructed the jury that it had to find Bonfanti not guilty if the State failed to carry its burden. *See State v. Villacci*, 2018 ME 80, ¶ 10, 187 A.3d 576.

the use of deadly force is necessary. Section 108(2)(C) lists several circumstances under which the use of deadly force is *not* justified. Among those circumstances is one described in section 108(2)(C)(2), which "makes the self-defense justification unavailable to a defendant who uses deadly force against a victim in aid of a third person if the defendant knew that the third person intentionally and unlawfully provoked the victim into using deadly force." *Daley*, 440 A.2d at 1055 (quotation marks omitted).[4]

[¶17] In *Daley*, the defendant and the victim described in markedly different ways the assault with which the defendant was charged, but neither version involved a third party. *Id.* at 1054-55. After his conviction, the defendant appealed, arguing that the trial court erred by instructing the jury on section 108(2)(C)(2). *Id.* at 1055. In vacating the conviction, we considered several factors, including that the defendant "rest[ed] his entire defense on the justification of self-defense," the instruction on third-party provocation was not generated by the evidence, the trial court stated the "exact reverse" of the law of self-defense in explaining how the law applied to the case, and "[t]he whole charge was lengthy and confusing." *Id.* at 1055-56.

---

[4] *See also State v. Uffelman*, 626 A.2d 340, 342 (Me. 1993) (concluding that the trial court did not err when it instructed the jury that the defendant would not have been permitted to use deadly force in response to the victims' use of such force if the defendant had known that another person, such as the defendant's wife or children, had intentionally and unlawfully provoked the victims).

[¶18]  In contrast, the trial court's charge to the jury here was accurate, clear, and concise.  The trial court began its self-defense instructions by properly instructing the jury on the general rule governing when a person may use deadly force.  The court then instructed the jury on some exceptions to the general rule, including the exceptions related to provocation by the defendant, provocation by a third party, and the defendant's duty to retreat.  Next, the court explained to the jury how the law applied to the circumstances of the case.  In doing so, the court correctly identified the four circumstances that the State could prove that would disprove Bonfanti's claim of self-defense—namely, that (1) Bonfanti did not reasonably believe that deadly force was about to be used against him, (2) Bonfanti did not reasonably believe that his use of deadly force was necessary, (3) Bonfanti provoked the victims so that he could cause them harm, or (4) Bonfanti knew that he could have safely retreated.  Although the trial court ought not have recited the portion of the self-defense statute related to third-party provocation, importantly, the trial court did not state that that exception applied under the circumstances of this case.

[¶19]  Viewing the instructions as a whole, we conclude that the trial court's accurate description but unnecessary inclusion of the third-party-provocation exception in its recitation of the law was not obvious

error.[5] *See State v. Baker*, 2015 ME 39, ¶ 11, 114 A.3d 214 (stating that a defendant is entitled to relief only "when jury instructions, viewed as a whole, are affected by highly prejudicial error tending to produce manifest injustice" (quotation marks omitted)).

The entry is:

Judgment affirmed.

David Paris, Esq. (orally), Bath, and Thomas G. Bonfanti personally, for appellant Thomas G. Bonfanti

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Washington County Unified Criminal Docket docket number CR-2020-39
FOR CLERK REFERENCE ONLY

---

[5] Bonfanti notes that, at one point, the trial court replaced the word "and" with the word "or" when reciting the self-defense statute during the jury instructions. Although such a misstatement could be prejudicial in other contexts, it is of no import here.