MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:    2023 ME 32
Docket:      Som-22-87
Argued:      December 6, 2022
Decided:     May 25, 2023
Revised:     June 13, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

## STATE OF MAINE

v.

## KYLE A. CHASE

JABAR, J.

[¶1]  Kyle A. Chase appeals from (1) a judgment of conviction of aggravated assault, 17-A M.R.S. § 208(1)(C) (2023), robbery, 17-A M.R.S. § 651(1)(B)(2) (2023), domestic violence assault, 17-A M.R.S. § 207-A(1)(A) (2022),[1] domestic violence criminal threatening, 17-A M.R.S. § 209-A(1)(A) (2023), and theft by unauthorized taking or transfer, 17-A M.R.S. § 353(1)(A) (2023), entered by the trial court (Somerset County, *Mullen, C.J.*) after a jury trial and (2) the court's imposition of a sentence of five years in prison with all but twenty-four months suspended followed by three years of probation on the

---

[1]  Title 17-A M.R.S. § 207-A(1)(A) (2022) was amended, effective January 1, 2023, to provide a cross-reference to the newly codified 19-A M.R.S. § 4102(6) (2023).  P.L. 2021, ch. 647, § B-17.  We cite the statute in effect at the time of the crime.

aggravated assault charge, with concurrent sentences on the other charges. We affirm the conviction but remand to the trial court for resentencing consistent with this opinion.

## I. BACKGROUND

[¶2] The trial court held a jury trial on March 17 and 18, 2022. The following facts, viewed in the light most favorable to the jury's verdict, are supported by the trial record. *See State v. Thomas*, 2022 ME 27, ¶ 2, 274 A.3d 356.

[¶3] On the morning of October 10, 2021, Chase and the victim[2] awoke together in Embden, Maine, where Chase was living with his great-aunt. Chase got upset when he discovered a picture on the victim's phone that he found offensive. He started yelling and became aggressive toward the victim. He put his hand on the victim's throat, pushed her against the counter, and kept squeezing with a lot of pressure until it became hard for the victim to breathe. Chase continued to apply pressure to the victim's throat for a couple of minutes while continuing to yell at her. The victim described the sensation of the room

---

[2] The parties stipulated that Chase and the victim are "family or household members as . . . those terms are defined in" 19-A M.R.S. § 4002(4) (2022). Title 19-A M.R.S. § 4002(4) was repealed and replaced with new section 4102(6) by P.L. 2021, ch. 647, §§ A-2, A-3 (effective Jan. 1, 2023) (codified at 19-A M.R.S. § 4102(6) (2023)), though the recodification does not affect the present case.

3

spinning, but she never passed out.  Chase eventually released the victim but continued to yell at her.

[¶4]  Chase then told the victim to get in her car.  The victim got in the driver's seat, and Chase got in the front passenger seat, and they continued to argue while sitting in the car.  After about fifteen minutes, Chase said he felt bad for yelling at the victim and told her to get out of the car so that they could hug.  The victim refused, and Chase became more upset.  Chase told the victim that if she did not get out of the car, he would drag her out.  The victim again refused, and Chase got out of the car, went around to the driver's side where the victim was sitting, opened the door, grabbed the victim, and pulled her out of the car by her shoulders, dragging her on the ground.  When Chase released the victim and she got back to her feet, Chase hugged her, but she did not hug him back.

[¶5]  Chase then told the victim to drive to a boat landing near the house so they could continue to talk.  The victim drove to the boat landing and parked.  The victim was crying and told Chase that she needed to leave and that she was running late for meeting up with her roommates.  Chase said that he had texted her roommates and taken care of it.  Chase and the victim continued to argue in the car for another ten to fifteen minutes.  Chase continued to yell, and the victim continued to cry.  Chase kept telling the victim to stop crying, and he

eventually grabbed the back of her neck and slammed her face against the steering wheel. Chase immediately removed his hand from the victim's neck and apologized, saying he did not know why he was acting like that.

[¶6] Chase then told the victim that he wanted them to go for a walk in the woods. When the victim refused, Chase threatened to drag her out of the car again. He got out of the car and went around to the driver's side where the victim was sitting, but the victim locked her door so Chase could not drag her out. Chase went back around to the passenger side, and eventually the victim agreed to get out of the car. When the victim got out of the car, Chase pushed her by the shoulders against the car.

[¶7] These events lasted about an hour and a half and were interrupted only briefly when Chase's great-aunt called him into the house for a couple of minutes. Chase testified at trial and denied ever touching the victim's neck, dragging her out of the car, or slamming her head against the steering wheel, but he did admit to grabbing her by the shoulders and demanding that she look him in the eyes while talking to him.

[¶8] In February 2022, Chase was indicted on the following five counts: (1) aggravated assault (Class B), 17-A M.R.S. § 208(1)(C); (2) robbery (Class B), 17-A M.R.S. § 651(1)(B)(2); (3) domestic violence assault (Class D), 17-A M.R.S.

§ 207-A(1)(A); (4) domestic violence criminal threatening (Class D), 17-A M.R.S. § 209-A(1)(A); and (5) theft by unauthorized taking or transfer (Class E), 17-A M.R.S. § 353(1)(A). Chase pleaded not guilty to all five counts, and a jury trial was held.

[¶9] At the conclusion of the jury trial, the jury returned a verdict of guilty on all five counts. At the sentencing hearing, the court conducted a *Hewey* analysis, setting the basic sentence at four years. After considering aggravating and mitigating factors, the court set the maximum sentence at five years. The court imposed a final sentence of five years in prison with all but twenty-four months suspended, followed by three years of probation.

[¶10] Chase timely appealed from the judgment and filed an application for leave to appeal from his sentence, which the Sentence Review Panel granted. *See* 15 M.R.S. §§ 2115, 2151, 2152 (2023); M.R. App. P. 2B(b), 20; *State v. Chase*, No. SRP-22-88 (Me. Sent. Rev. Panel May 25, 2022). The State raised two issues pursuant to 15 M.R.S. § 2115-A(3) (2023).

## II. DISCUSSION

[¶11] On appeal, we address three issues raised by Chase: (A) whether the court erred by not giving a specific unanimity instruction to the jury, (B) whether the court erred by not merging duplicative counts, and

(C) whether the court erred by referring to Chase's "insist[ence] on a trial" when imposing the sentence.[3]

## A.     Specific Unanimity Instruction

[¶12]  Chase contends that the court erred in failing to give a specific unanimity instruction because there was evidence of multiple incidents potentially sufficient to establish each of the five counts of which he was convicted, and without a specific unanimity instruction, there might not have been unanimous agreement among the jurors that a single incident of each charged offense occurred.  The State argues that Chase failed to object to the instructions given or to request a specific unanimity instruction; that the instruction is not warranted when a single crime can be committed by multiple means; that the instruction is not required on the facts constituting proof of each element of each offense; that the jury instructions did, in fact, require the jury to consider each count separately; and that the jurors were therefore properly instructed on their obligation to reach a unanimous verdict on each count.

---

[3]  Because we are affirming the conviction and remanding the matter to the trial court for resentencing, but not for a new trial, we do not address the State's trial-related arguments regarding the court's jury selection process and the court's refusal to allow the State to present evidence of prior consistent statements.

[¶13]  The record contains neither a request for a specific unanimity instruction nor an objection to the court's jury instructions.  Because the issue is unpreserved, our review is for obvious error.  *See State v. Asante*, 2020 ME 90, ¶ 10, 236 A.3d 464.  Obvious error occurs "when jury instructions, viewed as a whole, are affected by 'highly prejudicial error tending to produce manifest injustice.'"  *State v. Baker*, 2015 ME 39, ¶ 11, 114 A.3d 214 (quoting *State v. Ashley*, 666 A.2d 103, 106-07 (Me. 1995)).  For obvious error to exist there must be (1) an error, "(2) that is plain, (3) that affects substantial rights, and . . . (4) that . . . seriously affects the integrity, fairness, or public reputation of judicial proceedings."  *State v. Lajoie*, 2017 ME 8, ¶ 13, 154 A.3d 132.  To determine whether there is an error in jury instructions, "we evaluate the instructions in their entirety and will consider the total effect created by all the instructions and the potential for juror misunderstanding, and whether the instructions informed the jury correctly and fairly in all necessary respects of the governing law."  *Id.* ¶ 14 (quotation marks omitted).

[¶14]  "Courts regularly encounter indictments that may aggregate, in one count of the indictment, several identical crimes committed against one or more victims."  *State v. Fortune*, 2011 ME 125, ¶ 26, 34 A.3d 1115.  "When a defendant believes that he or she is prejudiced by the consolidation of several

identical crimes into a single count of an indictment, the defendant may move for relief from prejudicial joinder . . . ." *Id.* ¶ 27; *see also* M.R.U. Crim. P. 8(d).

[¶15] In the present case, there is no indication that before or during trial Chase moved to separate into multiple charges any of the five counts for which he argues there was evidence of multiple factual incidents potentially sufficient to establish a conviction. Nor did Chase make any effort to have the jury return a separate determination as to which factual incident supported each count on the verdict form. In effect, what the jury was asked to do was to return a general verdict for each of the charged offenses. In *Fortune*, we acknowledged the "continuing validity of general verdicts." 2011 ME 125, ¶¶ 28-29, 34 A.3d 1115; *see also Griffin v. United States*, 502 U.S. 46 (1991); *Black v. United States*, 561 U.S. 465 (2010); *State v. Burke*, 38 Me. 574, 575-76 (1854).

[¶16] Chase "could have proposed, but did not, that the jury be instructed that, to support a conviction, the jury was required to be unanimous that the elements of [each of the charged crimes] were proven as to at least one" of the alleged factual incidents. *Fortune*, 2011 ME 125, ¶ 30, 34 A.3d 1115; *see also* Alexander, *Maine Jury Instruction Manual* § 6-65 at 6-145 (2023 ed.). Such a specific unanimity instruction would "explain[] to jurors that they are required to unanimously agree that a single incident of the alleged crime occurred that

supports a finding of guilt on a given count." *State v. Rosario*, 2022 ME 46, ¶ 34, 280 A.3d 199 (quotation marks omitted). "[I]f the State alleges multiple instances of the charged offense, any one of which is independently sufficient for a guilty verdict as to that charge, specific unanimity instructions are proper." *State v. Osborn*, 2023 ME 19, ¶ 34, 290 A.3d 558; *see also Fortune*, 2011 ME 125, ¶ 31, 34 A.3d 1115 ("When separate, similarly situated victims or similar incidents such as thefts or drug transactions are the evidence supporting a single charge, the jury must unanimously find that one specific incident occurred . . . in order to convict."); Alexander, *Maine Jury Instruction Manual* § 6-65 at 6-145 (2023 ed.).

[¶17] Here, a specific unanimity instruction was not required. The jury was properly instructed on the requirement for general unanimity on the verdict. Chase was charged with one count of aggravated assault (Count 1) based on the alleged strangulation of the victim.[4] He denied the allegation, and it was up to the jury to determine whether the State proved beyond a

---

[4] Under Maine law, a person is guilty of aggravated assault if that person "intentionally, knowingly or recklessly causes . . . [b]odily injury to another under circumstances manifesting extreme indifference to the value of human life." 17-A M.R.S. § 208(1)(C) (2023). "Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, the observable physical condition of the victim or the use of strangulation." *Id.* For the purposes of the aggravated assault statute, strangulation "means impeding the breathing or circulation of the blood of another person by intentionally, knowingly or recklessly applying pressure on the person's throat or neck." *Id.*

reasonable doubt that Chase strangled the victim. There was only one alleged instance of conduct for the jury to consider for a conviction of aggravated assault. Accordingly, it is clear from reviewing the evidence and arguments of counsel that the evidence did not generate the need for a specific unanimity instruction.

[¶18] The same analysis is true with regard to the single domestic violence assault charge (Count 3).[5] As Chase points out, the evidence included multiple instances of what the jury could have taken to constitute domestic violence assault by Chase. They include, but are not limited to, the strangulation incident that must have been the basis for Chase's aggravated assault conviction. However, Chase was convicted of only one count of domestic violence assault, meaning that the jury had to agree unanimously on only one of the incidents that could qualify as domestic violence assault. For that reason, and because it was stipulated that Chase and the victim are family or household members, the same incident that was the basis for the jury's

---

[5] Under Maine law, a person is guilty of domestic violence assault if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person," 17-A M.R.S. § 207(1)(A) (2023); *see id.* § 207-A(1)(A), "and the victim is a family or household member," *id.* § 207-A(1)(A).

11

unanimous verdict on Chase's aggravated assault conviction could have been the basis for a unanimous verdict on the domestic violence assault charge.[6]

[¶19] In sum, the court did not err by failing to give a specific unanimity instruction in addition to the given general unanimity instruction; therefore, our obvious error analysis necessarily ends at the first step. We conclude that remand for a new trial is not required.

## B. Merger

[¶20] Chase contends that Counts 1 and 3 are duplicative and Counts 2 and 5 are duplicative, and that the court erred in failing to merge these counts, resulting in a double-jeopardy violation. The State concedes that Chase is correct on these points and that the court's failure to merge the duplicative counts was an error. Even though "[n]either party raised this issue in the trial court," failure to merge duplicative counts "must be seen as obvious error." *State v. Armstrong*, 2019 ME 117, ¶¶ 24-25, 212 A.3d 856; *see also State v. Robinson*, 1999 ME 86, ¶ 14, 730 A.2d 684 ("[T]he right to be free from double jeopardy . . . is a fundamental right of all citizens, and the law on the issue is clear and well established."); M.R.U. Crim. P. 52(b).

---

[6] The jury's reliance on the same incident as the basis for both convictions does not present a double jeopardy violation because domestic violence assault is not a lesser included offense of aggravated assault, as explained below. *See infra* ¶¶ 24-25.

[¶21] "The double jeopardy clauses of the Maine and federal constitutions prohibit, among other things, 'multiple punishments for the same offense.'" *State v. Armstrong*, 2020 ME 97, ¶ 7, 237 A.3d 185 (quoting *State v. Martinelli*, 2017 ME 217, ¶ 5, 175 A.3d 636).

> [W]hen a trial results in multiple verdicts for the same offense, the appropriate procedure to prevent a double jeopardy violation is to merge, not dismiss, the duplicative counts. If a double jeopardy violation is discovered on appeal, we will vacate the convictions and remand for merger of the duplicative counts. The result of this procedure will be multiple findings of guilt but only one conviction and one sentence.

*Armstrong*, 2020 ME 97, ¶ 11, 237 A.3d 185. "Merger is the correct remedy because it prevents the constitutional injury while preserving multiple verdicts." *Id.* ¶ 12.

[¶22] Relevant to Chase's argument, in assessing whether Counts 1 and 3 are duplicative, and Counts 2 and 5 are duplicative, and whether the duplication violates the Double Jeopardy Clause, we have said that,

> [b]ecause a person, by one act or transaction, may violate multiple criminal laws, courts apply the *Blockburger* test to determine whether the crimes enumerated by those multiple statutes are the same offense for purposes of double jeopardy protections. The test asks whether each statutory provision requires proof of a fact that the other does not. If each statutory provision requires a unique proof of fact, the *Blockburger* test is satisfied and there is no double jeopardy violation by subsequent prosecutions or multiple punishments.

*Ayotte v. State*, 2015 ME 158, ¶ 14, 129 A.3d 285 (citations and quotation marks omitted); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Newell v. State*, 371 A.2d 118, 119 (Me. 1977).

[¶23]  Here, the State agrees with Chase that theft by unauthorized taking or transfer (Count 5) is a lesser-included offense of robbery (Count 2), and that domestic violence assault (Count 3) is a lesser-included offense of aggravated assault (Count 1), and that the court therefore erred in not merging the lesser included offenses.  We agree that theft by unauthorized taking or transfer is a lesser-included offense of robbery.  *See State v. Belanger*, 552 A.2d 27, 28 (Me. 1988) (holding that a robbery charge was not separate and distinct from a charge of theft).  Applying the *Blockburger* test, each statutory provision does not require proof of a fact that the other does not, and the *Blockburger* test is not satisfied.  *Compare* 17-A M.R.S. § 353(1)(A), *with* 17-A M.R.S. § 651(1)(B)(2); *see also Blockburger*, 284 U.S. at 304; *Ayotte*, 2015 ME 158, ¶ 14, 129 A.3d 285.  Counts 2 and 5 should therefore be merged.

[¶24]  However, we do not agree that domestic violence assault is a lesser included offense of aggravated assault—it is not.  The parties' reliance on *State v. Carmichael*, 405 A.2d 732 (Me. 1979), is misplaced.  In *Carmichael*, we held that simple assault, when involving bodily injury, was a necessary

constituent of, and a lesser-included offense contained in, aggravated assault. *See id.* at 736-37. In the present case, there is no charge of *simple assault*; instead, Chase was charged with, and convicted of, aggravated assault and *domestic violence assault*. Applying the *Blockburger* test to Counts 1 and 3 requires a comparison of the aggravated assault statute with the domestic violence assault statute. *Compare* 17-A M.R.S. § 208(1)(C), *with* 17-A M.R.S. § 207-A(1)(A).

[¶25] "A person is guilty of aggravated assault if that person intentionally, knowingly or recklessly causes . . . [b]odily injury to another under circumstances manifesting extreme indifference to the value of human life." *Id.* § 208(1)(C). "Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, the observable physical condition of the victim or the use of strangulation." *Id.* In contrast, a person is guilty of domestic violence assault if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person," *id.* § 207(1)(A) (2023); *see id.* § 207-A(1)(A), "and the victim is a family or household member," *id.* § 207-A(1)(A). The requirement that the victim must be a *family or household member* is an additional element of domestic violence assault that is not an element of

aggravated assault; and the requirement that a person causes bodily injury to another *under circumstances manifesting extreme indifference to the value of human life* is an additional element of aggravated assault that is not an element of domestic violence assault. *Compare id.* § 207-A(1)(A), *with id.* § 208(1)(C); *but see id.* § 208-D(1)(D) (2023) (domestic violence aggravated assault). Accordingly, the *Blockburger* test is satisfied, and the court did not err in failing to merge Count 3 with Count 1.

[¶26]  In sum, we find that the court did err by failing to merge the duplicative counts of theft by unauthorized taking or transfer (Count 5) and robbery (Count 2), and that this error must be viewed as obvious error. *See Armstrong*, 2019 ME 117, ¶ 25, 212 A.3d 856.  We therefore remand to the trial court "for resentencing on a single conviction reflecting the merged counts." *Armstrong*, 2020 ME 97, ¶¶ 12, 15, 237 A.3d 185 ("Merger [rather than dismissal] is the correct remedy because it prevents the constitutional [double jeopardy] injury while preserving multiple verdicts.").  However, notwithstanding the State's agreement with Chase that the count of domestic violence assault (Count 3) should be merged with the count of aggravated assault (Count 1), we conclude that the court did not err by failing to merge

these counts because they are not duplicative, and we therefore affirm the judgment of the trial court as to those individual charges.

## C.     Sentencing

[¶27]  Chase also contends that the trial court improperly and unlawfully increased his sentence because he "insisted on a trial," and that the court's reliance on Chase's decision to seek a trial as an aggravating factor was unconstitutional.

[¶28]   "Generally, a defendant is not entitled to a direct review of a sentence and must seek review through the sentence review process." *State v. Moore*, 2023 ME 18, ¶ 23, 290 A.3d 533 (quotation marks omitted); *see also* 15 M.R.S. §§ 2151-2157 (2023); M.R. App. P. 20.  Chase did apply to the Sentence Review Panel seeking to appeal from his sentence, and the Panel granted his application, *Chase*, No. SRP-22-88 (Me. Sent. Rev. Panel May 25, 2022), however, approval from the Panel was unnecessary in this context because "when a defendant claims that the sentence is illegal and when the illegality appears on the face of the record, we will review the sentence on direct appeal," *State v. Winslow*, 2007 ME 124, ¶ 27, 930 A.2d 1080; *see State v. Discher*, 597 A.2d 1336, 1343 (Me. 1991).   "A defendant's claim that his sentence has been increased because he has exercised his right to a trial goes

to the legality of the sentence." *Moore*, 2023 ME 18, ¶ 23, 290 A.3d 533. "[W]e review the sentencing court's determination of the basic sentence de novo for misapplication of legal principles and its determination of the maximum sentence for abuse of discretion." *State v. Plummer*, 2020 ME 143, ¶ 10, 243 A.3d 1184 (quotation marks omitted).

[¶29] We have long held as "black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial." *State v. Farnham*, 479 A.2d 887, 891 (Me. 1984). We recently affirmed this right in *State v. Moore*, adding that "[a]lthough a court may deny leniency to a defendant who is convicted after a trial, in so doing, it may not consider the defendant's exercise of his right to trial." 2023 ME 18, ¶ 24, 290 A.3d 533. In articulating this distinction, we have stated that "[t]here is a difference between increasing a defendant's sentence because the defendant chooses to exercise the right to trial . . . and considering a defendant's conduct at trial and information learned at trial, along with other factors, in determining the genuineness of a defendant's claim 'of personal reform and contrition.'" *State v. Grindle*, 2008 ME 38, ¶ 19, 942 A.2d 673 (quoting *Farnham*, 479 A.2d at 889). And while our jurisprudence has not always been precise, in

*Moore* we clarified that "simply exercising the right to trial can never be cited as an aggravating factor." *Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533.

[¶30]  "When a sentencing court references a defendant's demand for a trial, we evaluate the reference in the context of the entire sentencing process." *Id.* ¶ 26; *see also State v. Hayden*, 2014 ME 31, ¶ 24, 86 A.3d 1221.  "'[I]t is sufficient to render a sentence invalid if it reasonably appears from the record that the [sentencing] court relied in whole or in part upon [the defendant's election to stand trial].'"  *Moore*, 2023 ME 18, ¶ 26, 290 A.3d 533 (final alteration in original) (quoting *Commonwealth v. Bethea*, 379 A.2d 102, 107 (Pa. 1977)).  "We need not conclude that the sentencing court in fact relied upon an improper consideration." *Id.*  "'Any doubt as to whether the defendant was punished for exercising his right to trial must be resolved in favor of the defendant.'" *Id.* (quoting *Farnham*, 479 A.2d at 894-95 (Glassman, J., concurring in part and dissenting in part)).

[¶31]  Here, in considering aggravating factors, the court stated:

> Frankly, in this case, any remorse shown by you, Mr. Chase, is after the fact, insofar as you flatly denied making any contact with the complainant's throat in this case, took that position on the witness stand, much less choking her, and taking responsibility is, frankly, missing *in light of the fact that you insisted on a trial for the offenses charged.  I'm not punishing anyone for insisting on a trial, but I do think it's difficult to argue that someone is taking responsibility if they insist on a trial.*

(Emphasis added.)  Chase relies on this statement by the court to argue that he was unconstitutionally penalized for exercising his right to a trial.  However, we must evaluate the reference in the context of the entire sentencing process, and the court further explained its position, stating:

> There's never—never, I repeat—a reason to lay hands on a woman. Certainly never a reason to assault someone that you profess to have feelings for.  Your texts made it clear that you understood that but obviously too late.  Of all the texts that I heard and read and saw, perhaps the one, quote, "I know I was in the wrong," end of quote, is the most insightful, along with, quote, "I will never touch you like that again."  However, going to trial and basically denying anything serious happened, to me, is just not taking responsibility or showing true remorse for what happened, and what could have happened is just horrific to contemplate.
>
> I do think you choked that young lady, and I do think you choked her twice.  Luckily that didn't happen.  I think you realized, albeit too late, but you did realize that what you did was wrong, and I think that was indicative of all the multiple texts and calls that you kept making.  You knew that you had made a serious mistake, but that didn't come through with—in your trial testimony, frankly.  I think I have to take that into consideration.

[¶32]  Thus, after the court referred to Chase's insistence on a trial, the court further explained that it believed Chase's testimony was untruthful and showed an unwillingness to accept responsibility for his actions.  Although we have held that it is permissible for a court to consider what it believes to be untruthful testimony as an aggravating factor, *see Grindle*, 2008 ME 38, ¶ 26,

942 A.2d 673, we made clear in *Moore* that if it reasonably appears from the record that the court relied in whole *or in part* on the defendant's decision to stand trial, that is sufficient to render the sentence invalid, *see Moore*, 2023 ME 18, ¶¶ 22-27, 290 A.3d 533.  In the present case, the court's statements are, at the very least, ambiguous regarding the effect of Chase's decision to stand trial.  Because any doubt as to whether the defendant was punished for exercising his right to trial must be resolved in favor of the defendant, we conclude that this case falls squarely into that group of cases we contemplated in *Moore*.  We therefore remand for resentencing consistent with this opinion.

The entry is:

> Sentence vacated.  Remanded for resentencing consistent with this opinion.  Judgment affirmed in all other respects.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Kyle A. Chase

Maeghan Maloney, District Attorney, and Paul Cavanaugh, Asst. Dist. Atty. (orally), Office of the District Attorney, Skowhegan, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2021-1020
FOR CLERK REFERENCE ONLY