MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2023 ME 64
Docket:         Cum-22-334
Argued:         June 8, 2023
Decided:        September 21, 2023

Panel:          STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

ALEXANDER W. RUSSELL

MEAD, J.

[¶1]  Alexander W. Russell appeals from a judgment of conviction of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2023), and four related crimes, entered by the trial court (Cumberland County, *MG Kennedy, J.*) following a jury trial.[1]

[¶2]  Russell first contends that the court erred in declining to give a jury instruction he requested regarding the quality of the police investigation, and in giving an instruction informing the jury that it could consider whether there

---

[1]  Russell was convicted of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2023) (Count 1); gross sexual assault (Class B), 17-A M.R.S. § 253(2)(H) (2023) (Count 2); unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(N) (2023) (Count 3); unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(M) (2023) (Count 4); and unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(G) (2023) (Count 5).

2

was evidence or a lack of evidence of a motive for any witness to lie. We disagree.

[¶3]  Russell also contends that the court erred in not giving a specific unanimity instruction "explain[ing] to jurors that they are required to unanimously agree that a single incident of the alleged crime occurred that supports a finding of guilt on a given count." *State v. Chase*, 2023 ME 32, ¶ 16, 294 A.3d 154 (quotation marks omitted).  The State concedes, and we agree, that a specific unanimity instruction was necessary as to Counts 3 and 4. Accordingly, we vacate the judgment of conviction on those counts.  We conclude, however, that a specific unanimity instruction was not required on Counts 1, 2, and 5, and we affirm the judgment on those counts.

[¶4]  Finally, we vacate the sentences imposed on Counts 1, 2, and 5 because they may have been affected by the now-vacated convictions on Counts 3 and 4.  Because the court will be required to resentence Russell anew on remand, we do not reach his remaining contention that the court's original sentence penalized him for his decision to exercise his constitutional right to a trial.

## I. BACKGROUND

### A.    Facts

[¶5]  Viewing the evidence admitted at trial in the light most favorable to the State, the jury rationally could have found the following facts.  *See State v. Beeler*, 2022 ME 47, ¶ 2, 281 A.3d 637.

[¶6]  The victim was born in 2002.  Russell was her stepfather for more than twelve years, and she thought of him as a "father figure."  Between April 2017 and November 2019, the victim, then a high school student, lived in a house in Raymond, Maine, with her mother, Russell, and several other family members.

[¶7]  Late one night in October 2018, when everyone else in the house was asleep, Russell came into the victim's bedroom and had her come to the basement with him on the pretext of teaching her how to load the woodstove. The victim sat on a hammock that was strung between two poles, waiting for Russell to show her how to stock the stove.  Instead, he "cuddled next to [her]." His hands "started getting a little roamy," rubbing her thighs and stomach, and "he kept on saying how much he loved [her] and cared about [her]."  When the victim got up from the hammock and reminded Russell that they were there to

4

show her how to load the stove, he "grabbed [her] and said, 'Not yet,' and pulled [her] closer"; they both ended up on the floor.

[¶8]  Russell physically restrained the victim and ultimately "forcefully" engaged in a sexual act involving penetration.  The victim was eventually able to escape after kicking Russell.

[¶9]  After the October 2018 assault, Russell began touching the victim's chest, buttocks, or vagina "almost every night"; those incidents occurred "too many [times] to count" and continued until the victim moved out of the house in November 2019.  When the touching occurred, the victim "made sure to be quiet as not to wake anybody because [she] was told to be quiet."  In total, Russell touched the victim inappropriately "hundreds of times."

[¶10]  On September 11, 2019, which was the victim's younger brother's birthday, only the victim, then age sixteen; her brother; and Russell were at home before the family was to go out to celebrate.  After sending the brother outside to play, Russell entered the room where the victim was lying on her bed texting a friend.  Russell lay down next to her and began cuddling and making small talk.  He rubbed her chest and thighs, at first over her clothes and eventually underneath.  Although the victim attempted to "block off" her body by "putting [her] arm over her chest and just kind of covering [her]self," Russell

removed her clothes and took a nude picture of her on her phone. Russell straddled her back and masturbated until he ejaculated on her.

[¶11] In addition to these two events, Russell sexually assaulted the victim by having vaginal intercourse with her six or seven times between October 2018 and November 2019. She had not yet turned eighteen. She did not report any of the abuse because she was scared and Russell told her "it was our little secret, everything was okay."

B.  **Procedure**

[¶12] Russell was indicted on six counts, five of which proceeded to trial: gross sexual assault (Class A); gross sexual assault (Class B); unlawful sexual contact (Class B); unlawful sexual contact (Class C); and unlawful sexual touching (Class D). *See supra* n.1. The State dismissed Count 6 of the indictment before trial.

[¶13] The court held a jury trial on May 2-3, 2022. In its case-in-chief the State called the victim, her mother, and the Cumberland County Sherriff's Office detective who investigated the case. After the State rested, the court denied Russell's motion for a judgment of acquittal. M.R.U. Crim. P. 29. Russell elected not to testify, and the defense rested. The jury returned verdicts of guilty on all counts.

[¶14]  At the sentencing hearing held on October 4, 2022, the court entered judgment and sentenced Russell on the Class A count to twenty years' imprisonment, with all but fourteen years suspended, and six years of probation.  The court imposed lesser concurrent terms of imprisonment on the remaining four counts.  Russell timely appealed and applied for leave to appeal from the sentence.  M.R. App. P. 2B(b)(1).  The Sentence Review Panel denied Russell's request for leave to appeal from the sentence.

## II.  DISCUSSION

[¶15]  Russell contends that two jury instructions the trial court should have given were not, and that one instruction that was given should not have been.  In general, "[w]e review jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law."  *State v. Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632 (quotation marks omitted).  In the case of review for obvious error, a standard applicable to two of the three challenged instructions here, "a defendant is entitled to relief only 'when jury instructions, viewed as a whole, are affected by highly prejudicial error tending to produce manifest injustice.'"  *State v. Bonfanti*, 2023 ME 31, ¶ 19, 294 A.3d 137 (quoting *State v. Baker*, 2015 ME 39, ¶ 11, 114 A.3d 214).

## A.     Quality of the Police Investigation

[¶16]   The detective who investigated the case testified and was cross-examined at length regarding what the defense viewed as deficiencies in the investigation. Following the close of the evidence, in a chambers conference held to discuss the jury instructions, Russell asked the court to give "an instruction . . . on police investigations" that he said was drawn from a Connecticut case. The proposed instruction, to which the State objected, would have informed the jury in part that "the defendant may rely on relevant omissions in the police investigation to raise reasonable doubt."[2]

[¶17] The court expressed doubt as to whether the quality of the police investigation was "something for the Court to comment on," noting that "it is

---

[2] The full proposed instruction read:

> You have heard some testimony of witnesses regarding the police investigation in this case. This is a factor that you may consider in deciding whether the [S]tate has met its burden of proof in this case because the defendant may rely on relevant omissions in the police investigation to raise reasonable doubt. You may consider whether such actions would normally be taken under the circumstances, whether, if those action(s) were taken, they could reasonably have been expected to lead to significant evidence of the defendant's guilt or innocence, and whether there are reasonable explanations for the omission of those action(s). If you find that any omissions in the investigation were significant and not reasonably explained, you may consider whether the omissions tend to affect the quality, reliability, or credibility of the evidence presented by the [S]tate to prove beyond a reasonable doubt that the defendant is guilty of the count(s) with which he is charged. As with any evidence it is up to you to decide the weight that you give to these considerations. The ultimate issue for you to decide, however, is whether the [S]tate, in light of all of the evidence before you, has proved beyond a reasonable doubt that the defendant is guilty of the count(s) with which he is charged.

8

certainly something for [the defense] to argue" and that whether the State had proved its case beyond a reasonable doubt "is the ultimate issue for [the jury] to decide." It then read to the parties "exactly what I'm going to say because I think this more than covers what [the defense is] trying to do here." The instructions that the court read in chambers and eventually gave to the jury emphasized the presumption of innocence and the State's burden of proof. Concerning Russell's proposed instruction, the court ruled, "I am not going to give that instruction. . . . I think it goes too far. It definitely highlights . . . your argument, your strategy in this case beyond a point that I'm willing to go." Russell objected and unsuccessfully renewed his request for the instruction following the court's jury charge.

[¶18] In his closing argument, Russell vigorously argued to the jury that deficiencies in the police investigation, which he detailed, should lead it to conclude that the detective

> didn't do a good job and he knew it. . . . These are all reasonable doubts. These are reasonable doubts the State might have put to rest if [the detective] did his job. . . . [Y]ou can absolutely consider the quality of the investigation as you consider this case and

> whether or not the quality of the investigation gives you confidence . . . that these allegations are true.

In *Hanscom*, we said that

> [w]here . . . the appellant has preserved the issue for appeal by requesting that the court give the instruction at issue, we will vacate the judgment if the appellant demonstrates that the requested jury instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave. In addition, the court's refusal to give the requested instruction must have been prejudicial to the requesting party.

2016 ME 184, ¶ 10, 152 A.3d 632 (citation and quotation marks omitted).

[¶19] We conclude that vacating the judgment is unwarranted here because, as the trial court noted, the substance of the proposed instruction was "sufficiently covered in the instructions the court gave." *Id.* The jury understood from those instructions that Russell was "presumed innocent unless and until the State has proven [his] guilt beyond a reasonable doubt" and that the presumption "is not a mere formality. It is fundamental to our system of justice." Additionally, the jury was told that the burden of producing evidence of a sufficient quality to meet that standard "is entirely on the State" and "never shifts from the State to the defendant." Those instructions applied to all of the evidence presented in the State's case-in-chief, including the victim's testimony and the detective's investigation.

[¶20]  A fundamental problem with Russell's proposed instruction on the quality of the police investigation is that it invites the jury to focus on something other than the sufficiency of the State's evidence in determining guilt.  Our standard jury instructions quite properly call upon the jury to not speculate on what other evidence might have been presented and what other witnesses might have been called.  *See* Alexander, *Maine Jury Instruction Manual* § 6-12 at 6-23 (2023 ed.).  Russell's proposed instruction calls for exactly the opposite.  Moreover, if we were to agree with Russell that the "quality" of the police investigation has special significance in weighing proof of guilt, that would necessarily mean that the jury should consider a high-quality police investigation as heightened proof of guilt.  A jury's focus should be equally directed to all of the evidence presented.

[¶21]  Furthermore, Russell suffered no prejudice because he was able to argue to the jury at length exactly what the court anticipated he would argue, namely that the detective's allegedly deficient investigation was a factor that the jury could and should consider in deciding whether the State's proof met the beyond a reasonable doubt standard.  *See id.*  All that was lacking—from Russell's standpoint—was the court's emphasis on that specific portion of the evidence and its imprimatur on that component of the defense strategy, a step

the court determined it should not take. *See id.* § 6-24 cmt. at 6-47 ("Any instruction that suggests that testimony of particular witnesses be examined with special focus . . . risks being viewed as a judicial comment on the evidence or an improper entry into the argument phase of trial.").

[¶22]   Russell contends that "the court's instruction erroneously restricted the universe of jurors' doubts to those based in the evidence" because it prevented the jury from considering evidence he asserts the detective should have gathered but did not. That is incorrect. Russell's cross-examination and closing argument stressed steps the detective failed to take, and those asserted deficiencies formed the basis for his ultimate argument that there was essentially no evidence to corroborate the victim's account. The jury was thus well aware of Russell's view that the investigation was seriously flawed and how—as Russell stressed—the quality of the investigation impacted what was "always the State's burden to prove any defendant guilty . . . beyond a reasonable doubt." The court's instructions confirmed and emphasized what Russell told the jury concerning the State's burden.

## B.    Motive or Lack of Motive to Lie

[¶23] Russell contends that the court erred by instructing the jury that it could hold against him any failure to establish that the victim had a motive to

12

lie.  His contention is based on a standard jury instruction the court gave:

> When considering the weight to give a particular witness' testimony, you can also ask yourselves was the witness' testimony corroborated?  Did someone else testify similarly or was there an exhibit presented that . . . backed up what the witness said?  [W]as the witness' testimony contradicted?  Did someone testify differently?  Is there any evidence to suggest a motive . . . or lack of motive for the witness to exaggerate or to lie?  What interest, if any, does each witness have in the outcome of the case?

*See id.* § 6-24 at 6-46.  Russell did not object to the instruction at trial, and so our review is for obvious error.  *Bonfanti*, 2023 ME 31, ¶ 15, 294 A.3d 137.

[¶24]  The court's instruction was both neutral and considerably more benign than Russell now contends.  The instruction applied to the victim, whose testimony was largely uncorroborated and who had an obvious interest in the outcome of the case, and to the detective, who Russell argued had a reason to exaggerate the quality and professionalism of his investigation.  Having himself raised an issue as to both the veracity of the victim's testimony and the integrity of the detective's investigation, Russell can hardly complain about an instruction directing the jury to consider motive to fabricate in both instances.  Furthermore, the jury was repeatedly and emphatically instructed that the entire burden of proof was on the State, and that Russell's decision not to testify was of no import whatsoever.  Because the court's instruction "informed the jury correctly and fairly in all necessary respects of the governing law," *State v.*

*Clark*, 2021 ME 12, ¶ 16, 246 A.3d 1165 (quotation marks omitted), and imposed no burden on Russell to produce evidence, its inclusion was not obvious error, *see State v. Warner*, 2023 ME 55, ¶¶ 18-21, --- A.3d ---.

## C.      Specific Unanimity

[¶25]   The Maine Constitution provides that when a jury renders a criminal verdict, "unanimity . . . shall be held indispensable."  Me. Const. art. I, § 7.  "A specific unanimity instruction explains to jurors that they are required to unanimously agree that a single incident of the alleged crime occurred that supports a finding of guilt on a given count.  Thus, if the State alleges multiple instances of the charged offense, any one of which is independently sufficient for a guilty verdict as to that charge, specific unanimity instructions are proper."  *State v. Osborn*, 2023 ME 19, ¶ 34, 290 A.3d 558 (citation and quotation marks omitted).

[¶26]   In a chambers conference held to discuss jury instructions, the State requested a specific unanimity instruction "[b]ecause we've alleged time frames in Counts 2, 3, and 4 . . . [so] that could be appropriate."  Russell did not join in the request; rather, defense counsel said, "I don't have any real concern with that."  When the court expressed its view that another instruction was better suited to the facts of the case, the State withdrew its request.  Russell

14

offered no objection and did not object to the omission of a specific unanimity instruction when the jury was charged.[3]

[¶27] Ordinarily, Russell's failure to affirmatively request a specific unanimity instruction would cause us to consider whether he waived his assertion on appeal that the instruction was required. *See State v. Miller*, 2018 ME 112, ¶ 14 n.6, 191 A.3d 356; *State v. Foster*, 2016 ME 154, ¶¶ 9-10, 149 A.3d 542 (holding, in a case where the defendant "elected not to request a specific jury instruction regarding the requirement of unanimity for each convicted count," that "[w]e will not review an issue—even for obvious error—when a party has, as a trial strategy, openly acquiesced to the process employed"); *State v. Fortune*, 2011 ME 125, ¶ 31, 34 A.3d 1115 ("*On request*, the jury should be instructed on this point . . . ." (emphasis added)); Alexander, *Maine Jury Instruction Manual* § 6-65 cmt. at 6-145 (same). Here we reach the

---

[3] The court instructed the jury:

> In several of these counts the indictment charges the crimes were committed on or between particular dates. The specific date of a crime need not be proven. It is enough if the State proves beyond a reasonable doubt that, [(A)], the crime charged was committed by the defendant and [(B)], it happened sometime within the dates suggested by the evidence [in] this case.

> The question of whether the crime was committed, not when it happened, must be the principal focus of your inquiry. However, you may consider any evidence of uncertainty as to dates of the alleged crime or crimes . . . in deciding whether the offense or offenses are proven beyond a reasonable doubt . . . .

*See* Alexander, *Maine Jury Instruction Manual* § 6-30 at 6-63 (2023 ed.).

merits of Russell's argument because on appeal the State has taken an affirmative position "conced[ing] that a specific unanimity instruction was necessary for Counts 3 and 4," and because Russell did not object to the inclusion of a specific unanimity instruction when the State initially requested one—he simply did not oppose the court's eventual course of action.  Our review is for obvious error.  *See Chase*, 2023 ME 32, ¶ 13, 294 A.3d 154.

### 1.  Count 1

[¶28]  In Count 1 of the indictment, the State charged that "[o]n or between October 1, 2018 and October 31, 2018 . . . **ALEXANDER RUSSELL**[] did engage in a sexual act with a minor . . . who submitted as a result of compulsion." A specific unanimity instruction was not required for Count 1 because two distinguishing features meant that "[t]here was only one alleged instance of conduct for the jury to consider for a conviction" on that charge.  *Id.* ¶ 17.  First, the victim testified that the woodstove incident occurred in October 2018. Second, that incident was the only sexual act described by the victim in her testimony that involved compulsion.[4]  Because the jury could identify the

---

4  Russell asserts that the jury could have found that any of several other incidents formed the basis of Count 1, and so a specific unanimity instruction was necessary as to that count.  That scenario would result, he argues, if the jury (1) did not believe the victim's testimony that the woodstove incident occurred; (2) did believe her testimony that Russell had vaginal intercourse with her "six or seven" times between October 2018 and November 2019; (3) accepted the victim's characterization of her relationship with Russell after the woodstove incident as a "forced relationship . . . for . . . [Russell's] sexual enjoyment"; and (4) applied the court's "specific date" instruction, *see* n.3, to find

16

discrete event alleged in Count 1, its guilty verdict necessarily reflected its unanimous determination that the allegation was true beyond a reasonable doubt.

### 2. Count 2

[¶29] In Count 2, the State charged that "[o]n or between October 1, 2018 and September 11, 2019 . . . **ALEXANDER RUSSELL**, being the . . . step-parent . . . of a minor, . . . did engage in a sexual act with said minor, who had not in fact attained the age of 18 years." Unlike Count 1, this charge did not allege a sexual act involving compulsion occurring in a specific month, but rather alleged that a sexual act occurred at some time over the course of a nearly one-year period.[5] Russell asserts that a specific unanimity instruction is necessitated by the

---

that any of the instances of vaginal intercourse would be sufficient to find Russell guilty of the compelled sexual act charged in Count 1.

We reject Russell's argument because the court correctly instructed the jury, "Compulsion means the use of physical force . . . that makes a person unable to physically repel the actor . . . ." *See* 17-A M.R.S. § 251(1)(E) (2023). The victim testified that Russell used physical force to compel her submission during the woodstove incident—the only event where she described the use of physical force. The victim's general characterization of her relationship with Russell as "forced" would not, on this record given the way in which the victim described other incidents, lead a juror following the court's instruction to find that he used "physical force . . . mak[ing] [her] unable to physically repel [him]" on other occasions. *See State v. Hunt*, 2023 ME 26, ¶ 30, 293 A.3d 423 ("A jury is presumed to follow the court's instructions.").

[5] The court instructed the jury that a "sexual act means any act between two persons involving direct physical contact between the genitals of one and the mouth or anus of the other or direct physical contact between the genitals of one and the genitals of the other." *See* 17-A M.R.S. § 251(C)(1) (2023).

length of the timeframe and the victim's testimony that Russell subjected her to "six or seven" instances of vaginal intercourse during that time.

[¶30]  In the unique circumstances of this case, however, we need not reach the specific unanimity issue with regard to Count 2.  The jury specifically and unanimously found, as evidenced by its guilty verdict in Count 1, that Russell committed a sexual act against the victim within the October 1, 2018, to October 31, 2018, timeframe.  That timeframe is subsumed within the October 1, 2018, to September 11, 2019, timeframe alleged in Count 2.  All that remained to be proved was that Russell was a step-parent to the victim—a fact that was not contested at trial and is not contested on appeal.[6]  If Count 1 had not been presented to the jury—if it had been dismissed or simply not alleged— we would be required to address the specific unanimity issue, but the unanimous verdict on Count 1 predicated upon the sexual act and the victim's age obviate the need for that analysis.[7]

---

[6]  Although Russell stands convicted of two separate offenses based upon the same act, double jeopardy and the need to merge the two convictions for sentencing are not implicated because the statutory definition for each offense requires proof of a fact that the other does not. *See State v. Chase,* 2023 ME 32, ¶ 22, 294 A.3d 154 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

[7]  Had we reached that issue, given that none of the instances of sexual intercourse during that time period were differentiated in any fashion, our analysis would likely have been informed by our decision in *State v. Reynolds,* 2018 ME 124, ¶¶ 15, 24-25, 193 A.3d 168.

### 3.    Counts 3 and 4

[¶31]   The State concedes that a specific unanimity instruction was necessary for Counts 3 and 4, and we agree.   Count 3 charged Russell with having had sexual contact with the victim involving penetration; Count 4 charged the same crime but did not include an allegation of penetration.

[¶32] Counts 3 and 4 required the jury to consider a series of acts—"[t]oo many to count," according to the victim—that could be differentiated, at least into general categories.  The victim testified that the sexual contact occurred at various times of the day "[w]herever I was at the time, in the bathroom, in my bedroom with my sister at the time, in the sun porch, one time down at the lake."  On at least two of those occasions Russell touched her vagina.  Given the victim's testimony concerning other events,[8] a juror could have decided that all of the acts happened, or only the ones taking place inside the house, or only those occurring outside the house.  An instruction was necessary to inform jurors that they were "required to unanimously agree that a single incident of the alleged crime occurred that support[ed] a finding of guilt on [each] count."

---

8  Concerning the woodstove incident, for example, Russell asserts "the implausibility" of such an event occurring "in a small house without anyone else noticing."

*Id.* Its absence is error that requires us to vacate the judgment as to Counts 3 and 4.

### 4. Count 5

[¶33] In Count 5, the State charged Russell with unlawful sexual touching occurring on a specific date: "[o]n or about September 11, 2019, . . . **ALEXANDER RUSSELL**, being the . . . step-parent . . . of a minor, . . . did intentionally subject said minor to sexual touching." The victim testified that on that date, which she remembered "very vividly" because it was her brother's birthday, Russell sexually touched her, took a nude picture of her, and masturbated while straddling her back. As in Count 1, for this count "[t]here was only one alleged instance of conduct for the jury to consider for a conviction." *Chase*, 2023 ME 32, ¶ 17, 294 A.3d 154. For that reason, "the evidence did not generate the need for a specific unanimity instruction." *Id.*

## D. Sentencing

[¶34] At the sentencing hearing, the court, after completing the analysis required by 17-A M.R.S. § 1602 (2023), and immediately before announcing the final sentence, addressed Russell:

> Make no mistake, sir, you are responsible for [the victim's] anguish and despair. These crimes, your conduct, your lack of remorse for what you've done is disgraceful and raises grave concerns about

> public safety going forward. I only hope . . . that in time, you will come to accept and understand the full extent of your conduct.

Russell contends that the court's comment concerning his lack of remorse can only be a reference to his decision to go to trial, and that the court used that decision against him in unconstitutionally increasing his sentence. Although a sentencing court is permitted to consider a lack of remorse at sentencing, which may be found in a defendant's commission of repeated similar offenses against the same victim, "[i]t is black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial." *State v. Moore*, 2023 ME 18, ¶¶ 24-25, 290 A.3d 533 (quotation marks omitted).

[¶35] Here, we need not decide whether the court—notwithstanding its statement that "[w]hat is not relevant to the Court's consideration in sentencing is the Defendant's decision to go to trial[;][i]t is neither an aggravating nor a mitigating factor"—impermissibly penalized Russell for exercising his constitutional right. That is so because we vacate the judgment of conviction on Counts 3 and 4, which may affect the sentence as a whole. On remand, Russell may address the court's sentencing analysis anew.

The entry is:

> Judgment of conviction on Counts 1, 2, and 5 affirmed. Judgment of conviction on Counts 3 and 4 vacated. Sentence vacated. Remanded to the trial court for further proceedings in accordance with this opinion.

———————————

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Alexander W. Russell

Jacqueline Sartoris, District Attorney, Emily C. Protzmann, Asst. Dist. Atty., and Kate E. Marshall, Asst. Dist. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2020-1348
FOR CLERK REFERENCE ONLY