MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 124
Docket:       Oxf-17-468
Argued:       June 13, 2018
Decided:      August 21, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## JAMES A. REYNOLDS

JABAR, J.

[¶1]  James A. Reynolds appeals from a judgment of conviction for four counts of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B) (Supp. 1997);[1] five counts of unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C) (Supp. 1997);[2] and two counts of sexual abuse of a minor (Class C), 17-A M.R.S.A. § 254(3)(A) (Supp. 2001),[3] entered in the trial court

---

[1]  Title 17-A M.R.S.A. § 253(1)(B) has since been amended, but not in any way that affects this appeal.  *See* P.L. 2001, ch. 383, § 14 (effective Jan. 31, 2003); P.L. 2003, ch. 711, § B-2 (effective July 30, 2004).

[2]  The unlawful sexual contact statute then in effect has since been repealed and replaced.  P.L. 2001, ch. 383, §§ 22-23 (effective Jan. 31, 2003) (codified at 17-A M.R.S. § 255-A (2017), as later amended by, *e.g.*, P.L. 2011, ch. 464, § 9 (effective July 1, 2012)).

[3]  Title 17-A M.R.S.A. § 254(3)(A) has since been repealed and its contents incorporated into 17-A M.R.S. § 254(1)(A-2) (2017).  P.L. 2001, ch. 383, §§ 21, 156 (effective Jan. 31, 2003).  As Reynolds observes, the indictment and judgment and commitment refer to different statutory provisions for these counts.  Both counts of the indictment refer to 17-A M.R.S.A. § 254(1)(A), (3)(A) (2001)—which applied only when the actor was more than ten years older than the victim— while the judgment and commitment refers to 17-A M.R.S.A. § 254(1)(A) (2001), which applied to

2

(Oxford County, *Clifford, J.*) after a jury trial. Reynolds contends that (1) the court erred in denying his motion for judgment of acquittal on eight of the eleven counts because "a rational jury could not have unanimously found that those counts were supported by evidence of particular instances of sexual acts or contact"; (2) he was unfairly prejudiced by the court's admission into evidence of uncharged sexual abuse; and (3) the court erred in denying his motion for judgment of acquittal as to the 1997 and 1998 unlawful sexual contact charges because those charges were subject to a six-year limitations period and the State failed to commence prosecution within that time period. We disagree and affirm the judgment.

## I. BACKGROUND

A. Preliminary Proceedings

[¶2] In December 2016, Reynolds was indicted on four counts of gross sexual assault, 17-A M.R.S.A. § 253(1)(B); six counts of unlawful sexual contact, 17-A M.R.S.A. § 255(1)(C); and two counts of sexual abuse of a minor, 17-A M.R.S.A. § 254(3)(A). The indictment alleged a period of ongoing abuse against the victim on or about April 1 of every year from 1997 to 2002. In

circumstances where the actor was at least five years older than the victim, not ten. Because the evidence at trial demonstrated a greater-than-ten-year age gap between Reynolds and the victim, and because the court instructed the jury using "more than 10 years older" language, it appears that Reynolds was instead convicted pursuant to 17-A M.R.S.A. § 254(3)(A) (Supp. 2001). The judgment and commitment must be corrected to reflect the proper conviction.

Count 1 through Count 8, Reynolds was charged with committing one count of gross sexual assault and one count of unlawful sexual contact against the victim on or about April 1 of every year from 1997 to 2000. In Count 9 through Count 12, Reynolds was charged with committing one count of sexual abuse of a minor and one count of unlawful sexual contact against the victim on or about April 1 of 2001 and 2002.[4]

B. Motion In Limine Proceedings

[¶3] After jury selection in June 2017, the State moved in limine, pursuant to M.R. Evid. 404(b), to permit the admission of evidence of uncharged sexual abuse alleged to have taken place outside of Oxford County. According to the State, evidence of this conduct was admissible to "demonstrate [Reynolds's] opportunity to commit the sexual abuse, the relationship between the parties, as well as the intent to commit the ongoing abuse." Reynolds opposed the motion, arguing that admission of the alleged abuse violated both Rule 404(b) and M.R. Evid. 403.

[¶4] A hearing on the motion in limine was held before trial on July 17, 2017. The State clarified that although the "[t]he majority of the sexual abuse occurred in an apartment in . . . Paris [Oxford County]," incidents also

---

[4] Before trial, pursuant to M.R.U. Crim. P. 48(a), the State dismissed Count 12 due to insufficient evidence.

occurred "on the road and while out camping. And so the [S]tate would like to make reference to those in [its] testimony." Reynolds continued to argue against the admissibility of the uncharged abuse, contending that "[the victim] is claiming about 100 incidents, 80 percent of those happened at the house, at the apartment. . . . What is the purpose of bringing in uncharged incidents?" The court concluded that the proposed evidence was properly admissible under Rule 404(b) pursuant our decision in *State v. DeLong*, 505 A.2d 803, 805-06 (Me. 1986), because it was probative to demonstrate that "the relationship between the parties is that this defendant . . . considered this, you know, his – his sexual toy. I mean he did this – he did this as a matter of course wherever he went." However, in order to limit the prejudicial effect of these uncharged incidents, the court specified that the victim would not be permitted to describe the uncharged conduct "in detail."

[¶5] Reynolds preserved his objection to the evidence pursuant to Rule 403, claiming the unfair prejudice created by that evidence substantially outweighed its probative value. However, after Reynolds was given the opportunity to request a limiting instruction regarding the proper use of the uncharged conduct, he stated that he did not wish to do so. Specifically, in

response to the court's statement, "You're entitled to [a limiting instruction] . . . [a]nd you affirmatively waive that," Reynolds replied, "Yes."

C.      Factual History

[¶6]   The case then proceeded to trial.  Viewing the trial record in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt. *See State v. Haag*, 2012 ME 94, ¶ 2, 48 A.3d 207.  The victim was born in April 1987 and was nine years old when she first met Reynolds, who was born on March 30, 1969.  At the time, the victim was living with her grandparents in Oxford, but she subsequently moved into an apartment in South Paris with her mother, brother, and Reynolds.

[¶7]   The victim was sexually abused by Reynolds for "most of [her] childhood."   The first incident occurred when she was nine and Reynolds touched her genitals while he was driving with her in his work vehicle.[5]  From that point on, Reynolds touched her genitals weekly, "more times than [she] can count," until she was sixteen.  Starting when the victim was ten years old, Reynolds also forced her to put her hands on his genitals.  The abuse typically

---

[5] Because this conduct occurred when the victim was nine years old, and the indictment charged Reynolds with committing the sexual abuse beginning on the victim's tenth birthday, this was ostensibly one of the uncharged incidents that the court admitted pursuant to M.R. Evid. 404(b) and M.R. Evid. 403.

6

began by Reynolds saying "something like he wanted to play[,] and then just do what he wanted from there." The abuse occurred after the victim got home from school but before her mother got home from work, or on weekend mornings when her mother was either at work or grocery shopping.

[¶8] When the victim was ten years old, Reynolds forced her to put her mouth on his genitals while they were alone in the South Paris apartment. Starting when she was twelve years old, Reynolds removed the victim's pants and put his tongue on her genitals. Also when the victim was twelve, Reynolds touched her genitals with his genitals.

[¶9] In addition to her testimony regarding specific incidents of abuse, the victim also testified that Reynolds either (1) touched her genitals with his hand or mouth; or (2) forced her to touch his genitals with her hand or mouth on a weekly basis until she was sixteen years old.

[¶10] At no time were the victim and Reynolds married. When the abuse began, Reynolds told her that she would be in trouble if she said anything, and she never told anyone about the abuse while it was happening. In 2015, the victim finally told her then-fiancé what had happened to her.

D.     Specific Unanimity Instruction

[¶11]  At the close of the State's case-in-chief, Reynolds moved for a judgment of acquittal pursuant to M.R.U. Crim. P. 29(a), which the court denied.  After the close of the evidence, the court instructed the jury on specific unanimity.  *See State v. Hanscom*, 2016 ME 184, ¶¶ 11-12, 152 A.3d 632.  Reynolds objected to the court's initial instruction, stating that it was "a bit of a summary" and requesting that the court read the unanimity instruction "exactly as it's written."  The court agreed to do so and recited the specific unanimity instruction to the jury, generally tracking the language suggested in the *Maine Jury Instruction Manual*.  *See* Alexander, *Maine Jury Instruction Manual* § 6-65 at 6-133 (2017-2018 ed.).  There was no objection to this instruction.

E.     Conviction and Sentencing Proceedings

[¶12]  The jury returned guilty verdicts on all counts, and a sentencing hearing was held in October 2017.  The court sentenced Reynolds to fifteen years' imprisonment, all but ten years suspended, with six years' probation for each count of gross sexual assault, to be served concurrently with one another.   In addition, the court sentenced Reynolds to five years' imprisonment for each of the unlawful sexual contact and sexual abuse of a

8

minor charges, also to be served concurrently with the other sentences. This

appeal followed. *See* M.R. App. P. 2B(b)(1); 15 M.R.S. § 2115 (2017).

## II. DISCUSSION

### A.    Specific Unanimity

[¶13]  Reynolds contends that because the victim testified only to "three

discrete occasions of sexual acts or contact . . . only three convictions could

possibly have been the result of unanimous findings."[6]  According to Reynolds,

because the victim testified that there were "hundreds of sexual acts and

incidents of sexual contact" but "only mentioned three in enough detail to

distinguish one from any other," the jury could not have unanimously found

that he committed the additional eight offenses charged in the indictment.

[¶14]  "We review the denial of a motion for judgment of acquittal by

viewing the evidence in the light most favorable to the State to determine

whether a jury could rationally have found each element of the crime proven

beyond a reasonable doubt." *State v. Waterman*, 2010 ME 45, ¶ 29, 995 A.2d

243.

---

[6]  Reynolds argues that the jury could have rationally agreed on only three specific incidents of sexual abuse—when Reynolds (1) touched her genitals in his work vehicle, (2) forced her to put her mouth on his genitals while in the apartment, and (3) touched her genitals with his genitals in the living room.  However, because the abuse in the work vehicle occurred outside of Oxford County's jurisdiction and when the victim was nine years old—rather than ten, as alleged in the first count of the indictment—the jury could not have rationally agreed that the work vehicle incident constituted one of the incidents alleged.

[¶15]  The Maine Constitution provides that "unanimity, in indictments and convictions, shall be held indispensable." Me. Const. art. I, § 7.  As we have previously explained, "[c]ourts regularly encounter indictments that may aggregate, in one count of the indictment, several identical crimes committed against one or more victims."  *State v. Fortune*, 2011 ME 125, ¶ 26, 34 A.3d 1115.  This is especially common in cases where, as here, there are allegations of "multiple sex acts committed against a minor child."  *Id.*; *see, e.g.*, *Hanscom*, 2016 ME 184, ¶¶ 2, 9, 152 A.3d 632; *State v. Shulikov*, 1998 ME 111, ¶ 11, 712 A.2d 504; *State v. Cloutier*, 1997 ME 96, ¶ 2, 695 A.2d 550.  Thus, when separate but similar incidents "are the evidence supporting a single charge, the jury must unanimously find that one specific incident occurred."  *Fortune*, 2011 ME 125, ¶ 31, 34 A.3d 1115; *see Hanscom*, 2016 ME 184, ¶ 12, 152 A.3d 632 ("[T]he specific unanimity instruction merely requires the State to persuade the jury beyond a reasonable doubt that the crime at issue was committed on some particular *occasion*.").

[¶16]  Our previous opinions in this area, however, have not directly addressed the *specificity* of the evidence required to support a unanimous jury verdict of guilty on multiple sexual offenses.  *See generally*, *e.g.*, *Hanscom*, 2016 ME 184, 152 A.3d 632; *Shulikov*, 1998 ME 111, 712 A.2d 504; *Cloutier*,

1997 ME 96, 695 A.2d 550. For example, in *Hanscom*, we reviewed a trial court's denial of a request for a specific unanimity instruction where the defendant was charged with two counts of unlawful sexual contact involving two victims. 2016 ME 184, ¶¶ 2, 6, 152 A.3d 632. In that case, one of the victims testified that the defendant abused her "like every day we slept [at the defendant's house]," and the other victim testified that the abuse occurred "more than once but it didn't always happen." *Id.* ¶ 4 (quotation marks omitted). In concluding that the court erred in declining to give the requested specific unanimity instruction, we explained that

> because the State presented evidence that Hanscom committed the same crime against each victim on different occasions, and any one of those occasions could have led to a guilty verdict on that particular charge . . . the specific unanimity instruction [would] prevent[] jury confusion and . . . ensure that a guilty verdict is based on the jury's unanimous conclusion that the State proved a single criminal episode.

*Id.* ¶ 12.

[¶17]   Thus, although we suggested in *Hanscom* that a properly instructed jury *could have* relied on the victims' testimony to unanimously find the defendant guilty on both counts, our holding was limited to the issue of whether the court erred in denying the requested specific unanimity instruction. *See id.*

[¶18] In *Shulikov*, a case in which the defendant did not request a specific unanimity instruction, we considered an issue closely related to the one at hand—whether the State presented sufficient evidence for the jury to rationally find that the defendant committed gross sexual assault against a victim on eight particular occasions. 1998 ME 111, ¶ 11, 712 A.2d 504. There, the victim specifically testified as to two instances of sexual assault by the defendant, her father, in early 1993 and 1995, and also testified that she endured an "overall pattern of sexual abuse by her father" during which he had sexually assaulted her three times a week between January 1, 1993, and December 31, 1994. *Id.* ¶¶ 3, 11, 12.

[¶19] Relevant to this case, we rejected the defendant's contention that the trial record was sufficient only to sustain convictions based on the two specific acts she described—but not the eight counts alleged during the "overall pattern of sexual abuse" between January 1, 1993, and December 31, 1994—concluding that

> the jury reasonably could have believed the victim's testimony that [the defendant] engaged in sexual intercourse with her at least once a week during the time periods charged in the indictment. This testimony is sufficient for the jury to find every element of gross sexual assault beyond a reasonable doubt. *There is no requirement that each count must be substantiated by details as to time, place, and location . . . .*

12

*Id.* ¶¶ 11-13 (emphasis added).

[¶20]   As such, although only by implication, our case law has recognized that specific evidence of particular incidents of sexual abuse is not required to support a unanimous jury verdict of guilty for multiple sexual crimes.

[¶21]   In cases involving allegations of multiple acts of sexual abuse committed against children, the victims, who claim to have been abused over a substantial period of time, "may have no practical way of recollecting, reconstructing, distinguishing or identifying by specific incidents or dates all or even any such incidents."  *People v. Jones*, 792 P.2d 643, 648 (Cal. 1990) (quotation marks omitted).   As the Washington Court of Appeals has observed, "The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the state's case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget."  *State v. Brown*, 780 P.2d 880, 885 (Wash. Ct. App. 1989).

[¶22]  For this reason, these types of cases present challenges involving questions relating to the sufficiency of the evidence and the defendant's right to due process.  Acknowledging such challenges in *Jones*, the Supreme Court of California reasoned,

> The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy).  Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., "twice a month" or "every time we went camping").  Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us") to assure the acts were committed within the applicable limitation period.  Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction.

792 P.2d at 655-56.

[¶23]  We agree that the State is not required to present specific evidence of separate and discrete incidents of abuse for the jury to convict a defendant of every charged offense, so long as the jury is properly instructed on specific unanimity, *see Hanscom*, 2016 ME 184, ¶ 12, 152 A.3d 632, and we concur with the *Jones* court that "the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to

sustain a conviction," *Jones*, 792 P.2d at 655; *see Commonwealth v. Kirkpatrick*, 668 N.E.2d 790, 793 (Mass. 1996).

[¶24]  Accordingly, we are not persuaded by Reynolds's assertion that jury unanimity on multiple counts of sexual abuse is unattainable where evidence of that abuse is supported by "generic" testimony.  Although the constitutional right to specific unanimity requires a jury to find that a crime was committed on "some particular *occasion*," *Hanscom*, 2016 ME 184, ¶ 12, 152 A.3d 632, "even generic testimony describes a repeated series of *specific*, though indistinguishable, acts of molestation," *Jones*, 792 P.2d at 658.  Despite the fact that a jury "may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described."  *Id.*  Indeed, "a jury will either believe that a consistent and repetitive pattern of abuse has occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it." *Kirkpatrick*, 668 N.E.2d at 794; *see State v. Logan*, 2014 ME 92, ¶ 17, 97 A.3d 121 (evidence that a crime was committed may be presented by way of the victim's testimony which, "by itself, is sufficient to support a guilty verdict for a sex crime . . . if the testimony addresses each element of the crime and is not inherently incredible" (quotation marks omitted)); *State v. Marden*, 673 A.2d

1304, 1312 (Me. 1996) ("The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury."). So long as a victim's testimony is both credible and sufficiently definite to address every element of the offenses charged, a jury is not precluded from unanimously finding a defendant guilty on those charges beyond a reasonable doubt.

[¶25] In this case, the victim testified that beginning when she was nine years old and continuing weekly until she was sixteen, Reynolds touched her genitals, in violation of 17-A M.R.S.A. § 255(1)(C). The victim further testified that by the time she was ten years old and continuing "probably once a week" thereafter, Reynolds began forcing her to touch his genitals, also in violation of 17-A M.R.S.A. § 255(1)(C). In addition, the victim testified that when she was ten years old, Reynolds forced her to put her mouth on his genitals, and when she was twelve years old, Reynolds put his tongue on her genitals, both in violation of 17-A M.R.S.A. § 253(1)(B). According to the victim, this conduct also occurred "probably once a week" until she was sixteen years old, in violation of 17-A M.R.S.A. §§ 253(1)(B) and 254(3)(A). Thus, although the jury may have been unable to distinguish among many of the various acts described during this pattern of consistent abuse, it was "certainly capable of

16

unanimously agreeing" that the victim's testimony was credible, that this pattern of abuse occurred, and that discrete acts comprising this pattern of abuse took place on or about the dates alleged in the indictment. *See Jones*, 792 P.2d at 658.

B.    Uncharged Conduct

[¶26]  Reynolds next argues that the court erred in admitting evidence of uncharged sexual abuse because "[t]he jury was essentially encouraged to punish [him] for a pattern of alleged, yet uncharged behavior."

[¶27]   As a preliminary matter, we note that Reynolds's theory on appeal differs from the one he advanced before the trial court.  In opposing the State's motion in limine, Reynolds argued only against the victim's references to sexual abuse occurring outside of Oxford County—"on the road and while out camping"—and not conduct that occurred in the family's Paris apartment.   Here, however, Reynolds argues that the uncharged conduct included not only each act outside of Oxford County, but also every referenced act of sexual abuse beyond the eleven acts specifically alleged in the indictment.  According to Reynolds, this means that "the jury's verdict on eight of the eleven counts is necessarily based on . . . generalized evidence overwhelmingly comprised of uncharged conduct."

[¶28] Because Reynolds, having been unsuccessful in his alternative argument before the trial court, has now changed his theory on appeal, we deem his current argument waived. *See Teel v. Colson*, 396 A.2d 529, 534 (Me. 1979). Even if Reynolds had preserved this issue, however, it would be unavailing. Rather than charging Reynolds with upwards of 300 counts of sexual abuse—according to the victim's testimony, she was abused at least once weekly over the course of six years—the State, in exercising its prosecutorial discretion, elected to charge him with only one act of abuse per year within that period of time. *See State v. Heald*, 382 A.2d 290, 301 (Me. 1978) ("[A] reasonable prosecutorial discretion in the enforcement of criminal laws is inherent in our criminal justice system . . . ."). The court properly determined that evidence of Reynolds's ongoing abuse was admissible to show the relationship between him and the victim. *See* M.R. Evid. 404(b); *DeLong*, 505 A.2d at 805-06.

[¶29] Moreover, Reynolds's argument that he was unfairly prejudiced by the admission of this evidence is unpersuasive for three reasons. First, when a defendant believes he has been unfairly prejudiced by the consolidation of several identical crimes into one count of an indictment, he may move for relief from prejudicial joinder pursuant to M.R.U. Crim. P. 8(d).

*Fortune*, 2011 ME 125, ¶ 27, 34 A.3d 1115. Reynolds failed to do so. Moreover, although Reynolds argues that he was unfairly prejudiced by "the generic testimony and lack of discrete events in this case," he did not request a bill of particulars pursuant to M.R.U. Crim. P. 16(d)(1) and is therefore presumed to have known which crimes he was required to defend against at trial. *See Cloutier*, 1997 ME 96, ¶ 9, 695 A.2d 550. Finally, Reynolds expressly waived his right to a limiting instruction regarding uncharged conduct, and is thereby precluded from now contending that the jury could have decided the case on an improper basis. *See State v. Roman*, 622 A.2d 96, 99 (Me. 1993) ("[I]n the absence of a request to the court to provide a limiting instruction, we can assume that counsel concluded that a limiting instruction would have overemphasized the importance of the evidence and decided to forego the request for strategic reasons." (quotation marks omitted)).

C.    Statute of Limitations

[¶30]   Finally, Reynolds argues that the court erred in denying his motion for judgment of acquittal as to Counts 2 and 4—which alleged unlawful sexual contact on or about April 1, 1997, and April 1, 1998, respectively—because those counts were subject to a six-year statute of

limitations and the State failed to commence prosecution within that time period.

[¶31]  We disagree.  Reynolds is correct that, before 1999, the criminal code provided for a six-year statute of limitations for unlawful sexual contact. 17-A M.R.S.A. § 8(1), (2)(A) (Supp. 1997); 17-A M.R.S.A. § 8(1), 2(A) (Supp. 1998), *amended by* P.L. 1999, ch. 438, §§ 1-2 (effective Sept. 18, 1999). However, the Legislature amended the Criminal Code in 1999 to remove the previous limitations period in 1999, and that amendment applied retroactively to the prosecution of crimes where the victim was younger than sixteen years old and where prosecution under the previous six-year limitations period had not yet been barred.  P.L. 1999, ch. 438, § 3 (effective Sept. 18, 1999).  Because the victim was under sixteen years old when Reynolds committed unlawful sexual contact in 1997 and 1998, and the six-year limitations period for those crimes had not yet expired when the Legislature removed the statute of limitations defense in 1999, the State was not prohibited from initiating prosecution for those offenses in 2016.[7]  *See Stogner v. California*, 539 U.S. 607, 611, 616-19 (2003).

---

[7]  Because the 1999 amendment only applied retroactively to offenses where the original six-year limitations period had not yet expired, we are unpersuaded by Reynolds's additional contention that the 1999 amendment constitutes an ex post facto law, in violation of Me. Const. art. I, § 11.  *See Stogner v. California*, 539 U.S. 607, 611 (2003) (reasoning that an ex post facto violation

The entry is:

> Judgment affirmed. Remanded for correction of the statutory references in the judgment and commitment on Counts 9 and 11.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant James A. Reynolds

Andrew S. Robinson, District Attorney, and Alexandra W. Winter, Asst. Dist. Atty. (orally), Office of the District Attorney, South Paris, for appellee State of Maine

Oxford County Unified Criminal Docket docket number CR-2016-714
FOR CLERK REFERENCE ONLY

---

occurs where a limitations period is extended "*after* the State has assured a man that he has become safe from its pursuit" (emphasis added) (quotation marks omitted)).