MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 84
Docket:        Lin-24-234
Argued:        June 4, 2025
Decided:       August 26, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

# STATE OF MAINE

v.

# CHUCK D. SCHOOLEY

HORTON, J.

[¶1]  Chuck D. Schooley appeals from a judgment of conviction of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2025), and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2025), entered by the trial court (Lincoln County, *Billings, J.*) after a jury trial on the charge of gross sexual assault and a nonjury trial on the charge of violating a condition of release.  Schooley argues that the court erred in failing to give a jury instruction sua sponte on specific unanimity and in failing to intervene sua sponte during closing arguments when the prosecutor invoked the jury's sympathy and vouched for the credibility of the alleged victim, a child who had testified that Schooley had sexually assaulted her.  Reviewing these unpreserved issues for obvious error, we affirm the judgment.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt. *See State v. Brackett*, 2023 ME 51, ¶ 9, 300 A.3d 827.  From 2019 to 2022, the victim lived in Wiscasset with her mother, her twin younger brothers, and Schooley, her mother's spouse.  Starting when the victim was eight years old and continuing until she was nearly twelve, Schooley repeatedly made her undress in his bedroom and touched her vagina with his penis.  He would hit her or her brothers or take away her phone if she did not cooperate.

[¶3]  On one occasion Schooley told the victim to go upstairs to his bedroom, after which he went up, closed the curtains, told her to undress, undressed himself, pushed her onto the bed, and put his penis in her vagina.  On another occasion, while they were outside at a family bonfire, he told her to go inside and get a beer.  He then followed her in, told her to go up to his bedroom, went up after her, picked her up from the corner of the room where she was crying, placed her on the bed, took off her clothes and his own clothes, and put his penis in her vagina.

[¶4]  On a third occasion, in July 2022, on the way home from shopping with the victim, Schooley pulled over his car and told the victim to take off her

clothes and sit on his lap. She took off her clothes but refused to sit on his lap, and he threatened to hurt her or her brothers if she did not put her mouth on his penis. She put her mouth on his penis, stopping only when a car paused near them before turning into a driveway.

[¶5] Two days after the incident in the car, the victim informed her mother and a friend that Schooley had been sexually assaulting her. The friend notified the Department of Health and Human Services, and upon receiving information from the Department, the police investigated the report.

[¶6] On July 20, 2022, the State charged Schooley by complaint with gross sexual assault and violating a condition of release, alleging that both crimes occurred between January 1, 2020, and July 16, 2022. The grand jury returned an indictment for both of those charges on September 21, 2022.

[¶7] Schooley waived the right to a jury trial for the charge of violating a condition of release, and the court conducted a jury trial on the charge of gross sexual assault on February 20 and 21, 2024. The State presented testimony from the detective who investigated the alleged gross sexual assault; the victim, who was thirteen years old at the time of trial; and the victim's mother. Schooley did not testify and offered no other evidence.

[¶8]  The court discussed jury instructions with the State and Schooley in chambers.  The State and Schooley then reviewed the court's draft jury instructions and indicated that they had no objections to the draft instructions. The court delivered jury instructions explaining the presumption of innocence, the State's burden of proof, the elements of gross sexual assault,[1] the lack of any requirement that the State prove that Schooley acted on a specific date within the range charged in the indictment, and the jury's role as the finder of facts. Just before the court invited arguments from counsel, it instructed the jury that the parties' arguments were not evidence.

[¶9]  In the State's closing, it argued that it had offered proof of three particular occasions on which Schooley had engaged in a sexual act with the victim before her twelfth birthday.  It argued that the victim's credibility was the crucial issue in the case and that the victim had provided detailed testimony of her experience.  In summarizing the victim's testimony, the State emphasized that the victim "really was all on her own up here, and it took great courage for her to finally step forward and tell you, 12 strangers, the Judge, and to again

---

[1]  "A person is guilty of gross sexual assault if that person engages in a sexual act with another person and . . . [t]he other person, not the actor's spouse, has not in fact attained 12 years of age." 17-A M.R.S. § 253(1)(C).  "'Sexual act' means . . . [a]ny act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other . . . ."  17-A M.R.S. § 251(1)(C)(1) (2025). "A sexual act may be proved without allegation or proof of penetration."  *Id.* § 251(1)(C).

face Mr. Schooley." The State further commented that "it was very probably traumatic for her to begin to experience this" but that "[s]he stood up to [the defense attorney's] cross, stuck to her story, [and] was consistent with her story." The State argued, "She really worked to get her truth out. And I think if you notice—I did notice—she almost grew up right in that stand. She took ownership back of her life, got stronger and by telling her truth and her story, and I think those all lead to the credibility here. And this case really does turn on the credibility of the eye witness in this matter."

[¶10] In his closing, Schooley argued that the State "ha[d] to prove a specific event occurred." He argued that the victim was not credible, focusing on changes in the details of her testimony and on actions that the victim claimed Schooley had undertaken that did not make sense because others were around. He went through each incident described by the victim, pointing out inconsistencies and changes in details. He characterized the State's proof as consisting of "the fabrications of a lonely, isolated child with no other evidence." In its rebuttal argument, the State emphasized the police investigation leading up to the charges and concluded, "And, again, the State has a high burden here. The State welcomes that burden. And the State believes that the testimony of [the victim] yesterday was credible, and if you believe that testimony, then the

6

State has met its burden and should find Mr. Schooley guilty of gross sexual assault."

[¶11] Before sending the jury to the deliberation room, the court instructed the jury, "In order to return a verdict, your verdict must be unanimous." It instructed the jury that "all of [the jurors] must agree" to the verdict.

[¶12] Five hours after beginning deliberations, the jurors sent a note to the court that the court described as "suggesting that they [did] not have a unanimous verdict." The court provided further instructions to the jury, indicating that the time spent on its deliberations was not unusual for the case type, that the verdict must represent the considered judgment of each juror and must be unanimous, and that jurors should keep open minds and be judges of the facts to determine whether the State had proved the charge beyond a reasonable doubt. Neither Schooley nor the State asked the court to instruct the jury that to find Schooley guilty, the jury had to find unanimously that the State had proved a specific instance of gross sexual assault, and the court did not give such an instruction sua sponte. About half an hour later, the jury found Schooley guilty.

[¶13]  At the outset of the sentencing hearing held in May 2024, the court found Schooley guilty of violating a condition of release based on the jury's verdict and Schooley's admission that, due to unrelated charges pending at the time of his crimes, he had been subject to bail conditions prohibiting him from committing a crime.  For the conviction of gross sexual assault, the court sentenced Schooley to eighteen years in prison, with none of the term suspended, followed by fifteen years of supervised release.  For violating a condition of release, it sentenced Schooley to six months in prison, to run concurrently with the sentence for gross sexual assault.  The court also ordered Schooley to pay fees of $70 to the Victims' Compensation Fund.  Schooley timely appealed.  *See* 15 M.R.S. § 2115 (2025); M.R. App. P. 2B(b)(1).

[¶14]  At oral argument on the appeal, the State conceded that, if we were to reach the issue, the absence of a specific unanimity instruction was "obvious error," but the State did not concede that Schooley's conviction had to be vacated as a result.  Even when present, error that is plain or obvious on the record does not necessarily justify setting aside a conviction.  *See State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147 (stating that to warrant setting aside a conviction, a plain error must affect the defendant's substantial rights and "seriously affect[] the fairness and integrity or public reputation of judicial

proceedings"). We therefore understand the State to have conceded only that, if we conclude that obvious error review is available, the evidence generated an instruction on specific unanimity and the absence of that instruction was error that was plain on the record.

## II. DISCUSSION

[¶15] Schooley asks us to vacate the judgment due to (A) the court's failure to deliver a jury instruction on specific unanimity and (B) prosecutorial error in the State's closing argument.

## A. The Absence of a Jury Instruction on Specific Unanimity

[¶16] Schooley argues that, given the evidence of multiple occasions of what the jury could have found constituted gross sexual assault, the court committed obvious error in not instructing the jury that it could find Schooley guilty only if it agreed unanimously that Schooley committed gross sexual assault on at least one specific occasion. He contends that the prejudice to him is clear because the jury sent the court a note indicating a lack of unanimity and the court still did not clarify that specific unanimity was required.

### 1. Availability of Review and Standard of Review

[¶17] We will not review a court's jury instructions if the defendant openly acquiesced to the instructions at trial as a trial strategy. *See State v.*

*Russell*, 2023 ME 64, ¶ 27, 303 A.3d 640; *State v. Foster*, 2016 ME 154, ¶¶ 9-10, 149 A.3d 542 (declining to review jury instructions, even for obvious error, when the defendant did not request a specific unanimity instruction and withdrew his motion for a bill of particulars, which could have connected each charge with a specific incident).  If counsel makes a strategic or tactical decision not to request an instruction, we will not review the instructions.  *See State v. Nobles*, 2018 ME 26, ¶ 34, 179 A.3d 910; *State v. Ford*, 2013 ME 96, ¶¶ 15-17, 82 A.3d 75.[2]

[¶18]  Although Schooley agreed to the instructions given here, we review the instructions for obvious error because nothing in the record suggests that a specific unanimity instruction was considered by the parties or

---

[2] We have declined to review instructions when a different instruction would have conflicted with the defense's trial strategy.  *See State v. Cleaves*, 2005 ME 67, ¶¶ 13-14, 874 A.2d 872 (reasoning further that there was no obvious error).  We have also declined to review whether jury instructions on specific unanimity were required when it did not appear that either the defendant or the State requested a specific unanimity instruction, and the defendant did not raise the issue on appeal.  *State v. Villacci*, 2018 ME 80, ¶ 1 n.1, 187 A.3d 576 (noting the "obvious need" for the specific unanimity instruction).  In another case, we stated that the defendant "affirmatively approved of the jury instructions, thereby waiving any [specific unanimity] challenge."  *State v. Miller*, 2018 ME 112, ¶ 14 n.6, 191 A.3d 356.

In contrast, rather than deeming the issue waived, we have reviewed jury instructions for obvious error when the State conceded on appeal that a specific unanimity instruction was necessary and the defendant had not objected at trial to the State's request for a specific unanimity instruction.  *See Russell*, 2023 ME 64, ¶ 27, 303 A.3d 640.  We have also reviewed jury instructions for obvious error when "[t]he record contain[ed] neither a request for a specific unanimity instruction nor an objection to the court's jury instructions."  *State v. Chase*, 2023 ME 32, ¶ 13, 294 A.3d 154.  In *State v. Lajoie*, 2017 ME 8, ¶ 13 & n.3, 154 A.3d 132, we reviewed the jury instructions for obvious error but noted that we could have "decline[d] to reach the merits of [the] challenge to the jury instructions in its entirety because [the defendant] not only expressly acquiesced to those instructions but affirmatively requested an amendment to them, which the court granted."

the court. Moreover, "when fundamental constitutional rights are at stake, every reasonable presumption is made against a finding of waiver." *State v. True*, 2017 ME 2, ¶ 15, 153 A.3d 106 (quotation marks omitted). A specific unanimity instruction would have been consistent with Schooley's defense; he challenged the credibility of the victim and explicitly argued to the jury that the State had to prove that "a specific event occurred."

[¶19] Reviewing the jury instructions for obvious error, *Russell*, 2023 ME 64, ¶ 27, 303 A.3d 640, we consider whether there was "(1) an error, (2) that is plain, and (3) that affects substantial rights. . . . [W]e will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings," *Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147. Our determination of whether the absence of a specific unanimity instruction in this case was error calls for a review of the specific unanimity requirement and its role in jury instructions.

## 2. The Specific Unanimity Requirement

[¶20] The Maine Constitution requires a unanimous guilty verdict for a person to be convicted of a crime through a jury trial: "[U]nanimity, in indictments and convictions, shall be held indispensable." Me. Const. art. I, § 7;

*see State v. Reynolds*, 2018 ME 124, ¶ 15, 193 A.3d 168.  Although Schooley does not cite the United States Constitution, the Sixth and Seventh Amendments apply to also require unanimity in state court jury verdicts.  *Andres v. United States,* 333 U.S. 740, 748 (1948); *see Ramos v. Louisiana*, 590 U.S. ---, ---, 140 S. Ct. 1390, 1397 (2020) ("There can be no question . . . that the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally.").

[¶21]  A jury must be not only unanimous in deciding the verdict itself but also "in substantial agreement as to just what the defendant did."  *United States v. Russell*, 134 F.3d 171, 176 (3d Cir. 1998) (quotation marks omitted); *see Reynolds*, 2018 ME 124, ¶ 15, 193 A.3d 168.  Hence, there are two types of jury instructions on unanimity—the "general unanimity instruction" that the jury must be in unanimous agreement as to the verdict on each charge and the "specific unanimity instruction" that the jury must be in unanimous agreement on the factual basis for a guilty verdict.  *See State v. Chase*, 2023 ME 32, ¶ 17, 294 A.3d 154; *United States v. Smukler*, 991 F.3d 472, 492 (3d Cir. 2021).

[¶22] When the State charges a single criminal act but presents evidence of multiple acts that could constitute the crime, as it did here, the verdict cannot be predicated on a finding by some jurors that the defendant committed the

crime on one occasion and a finding by other jurors that the defendant committed the crime on a different occasion. *See State v. Hanscom*, 2016 ME 184, ¶¶ 9, 11-12, 152 A.3d 632. Thus, "*on request*, the jury should be instructed on specific unanimity, if the evidence offered in support of one charge includes more than one incident of the charged offense." *Id.* ¶ 16 (emphasis added) (alterations and quotation marks omitted).

[¶23] However, the specific unanimity requirement does not mean that the jurors must agree on every detail of the State's proof. In the words of Justice Blackmun, "'[U]nanimity means more than a conclusory agreement that the defendant has violated the statute in question; there is a requirement of substantial agreement as to the principal factual elements underlying a specified offense.' This rule does not require that each bit of evidence be unanimously credited or entirely discarded, but it does require unanimous agreement as to the nature of the defendant's violation, not simply the fact that a violation has occurred." *McKoy v. North Carolina*, 494 U.S. 433, 449 n.5 (1990) (Blackmun, J., concurring) (alterations and citations omitted) (quoting *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983)); *see Russell*, 134 F.3d at 176 ("The purpose of a specific unanimity instruction is to ensure that the jurors are in substantial agreement as to just what a defendant did as a step

preliminary to determining whether the defendant is guilty of the crime charged." (quotation marks omitted)). What specific unanimity requires is "either the election of a single act as a basis for the charged offense or an instruction requiring the jury to be unanimous in determining which act supports a conviction." *State v. Nicholas*, 151 A.3d 799, 804-05 (Vt. 2016).

[¶24] We have said that when a case involves one or more charges of gross sexual assault against a child, "the State is not required to present specific evidence of separate and discrete incidents of abuse for the jury to convict a defendant of every charged offense, so long as the jury is properly instructed on specific unanimity." *Reynolds*, 2018 ME 124, ¶¶ 21, 23, 193 A.3d 168. We also noted that "'the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction.'" *Id.* ¶ 23 (quoting *People v. Jones*, 792 P.2d 643, 655 (Cal. 1990)). In such cases, the State's only direct evidence may be the testimony of a child who "'may have no practical way of recollecting, reconstructing, distinguishing or identifying by specific incidents or dates all or even any such incidents.'" *Id.* ¶ 21 (quoting *Jones*, 792 P.2d at 648). Even though such generic evidence may lack specificity as to date and other details, it can be sufficient to "'describe[] a repeated series of *specific*, though indistinguishable, acts of molestation.'" *Id.* ¶ 24 (quoting

14

*Jones*, 792 P.2d at 658).  Based on such testimony, a jury "'may not be able to readily distinguish between the various acts, [but] it is certainly capable of unanimously agreeing that they took place in the number and manner described.'"  *Id.* (quoting *Jones*, 792 P.2d at 658).

### 3.    Review of the Jury Instruction in This Case

[¶25]  The charge of gross sexual assault against Schooley reads in part:

> On or about between January 1, 2020 and July 16, 2022, in Wiscasset, Lincoln County, Maine, CHUCK D. SCHOOLEY did engage in a sexual act(s) with minor child . . . , not his spouse, who had not in fact attained the age of 12 years.

(Emphasis omitted.)   At trial, the victim gave generic testimony about many instances of Schooley engaging in sexual acts with her during the two and a half years covered in the indictment and also testified to three instances as to which she described particular details.  Both the generic and specific testimony could have supported a finding that the State had proved beyond a reasonable doubt that Schooley had committed at least one specific instance of gross sexual assault against the victim within the timeframe charged in the indictment.  *See id.*  However, the jury was not instructed that it could convict Schooley only upon unanimous agreement that he committed the offense in at least one specific instance.  *See Hanscom*, 2016 ME 184, ¶ 12, 152 A.3d 632.  As the State

has conceded, the absence of a specific unanimity instruction is an error that is plain on the record. *See Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

[¶26] The next step in our review for obvious error is to determine whether the error "affects substantial rights." *Id.* When an unpreserved error relates to jury instructions, it affects the defendant's substantial rights if there is a reasonable probability that "the error was sufficiently prejudicial to have affected the outcome of the proceeding." *State v. Scott*, 2019 ME 105, ¶ 25, 211 A.3d 205 (quotation marks omitted); *see Pabon*, 2011 ME 100, ¶ 34, 28 A.3d 1147. A reasonable probability is more than a reasonable possibility. *See Pabon*, 2011 ME 100, ¶¶ 34-35, 28 A.3d 1147. Applied here, these principles require us to decide whether, in the absence of a specific unanimity instruction, there was a reasonable probability that the jury convicted Schooley of gross sexual assault without a unanimous agreement on the factual basis for the verdict.

[¶27] On this question, under the particular circumstances of this case, we conclude that it is not reasonably probable that the absence of a specific unanimity instruction prejudiced Schooley.[3] The prosecution's direct evidence consisted solely of the victim's testimony about multiple incidents of similar

---

[3] We note that the analysis could be different if, for instance, the State alleges multiple counts and not just one, or the court delivers jury instructions that differ from those given here.

sexual acts by Schooley, with no corroborating evidence. Schooley's entire defense was to deny categorically that any of the incidents occurred. Both parties in their closing arguments presented the credibility of the victim's testimony as the dispositive issue for the jury to decide. In such circumstances, when the central contested issue is the credibility of a child's testimony about a consistent pattern of sexual abuse over a long period, it is likely that "a jury will either believe that a consistent and repetitive pattern of abuse has occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it." *Reynolds*, 2018 ME 124, ¶ 24, 193 A.3d 168 (quotation marks omitted).

> [S]ince credibility is the true issue, the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act.

*People v. Moore*, 260 Cal. Rptr. 134, 144 (Cal. Ct. App. 1989) (citations omitted).

[¶28] In *State v. Bellanger*, the Supreme Court of Vermont observed, "Where the defense raises only a single issue—witness credibility—and the jury convicts despite this defense, then it is reasonable to conclude that jurors believed all of the witness's testimony and their verdict would not have been

different even if a specific unanimity instruction was given." 183 A.3d 550, 561-62 (Vt. 2018).

[¶29] In *Anderson v. State*, the Court of Appeals of Alaska addressed circumstances similar to those here:

> We recognize that the charges against Anderson were based on different acts of sexual contact that were factually distinct. The State's evidence concerning these acts varied somewhat in content and probative strength. Thus, it was logically possible that the jurors might believe that the State had proved some of these acts of sexual contact but not others. But even though this outcome may have been a logical possibility, it was not a reasonable possibility, given the way Anderson's case was litigated.
>
> In their summations to the jury, Anderson's attorney and the prosecutor each presented one theory of the case. Anderson's attorney offered one blanket defense to all the charges against Anderson: the charges were false . . . . Likewise, the State's theory of the case was consistent as to each act of sexual contact.

337 P.3d 534, 543 (Alaska Ct. App. 2014).

[¶30] In cases involving the allegation of multiple materially similar sexual assaults, other courts have also been reluctant to conclude that the lack of an instruction on specific unanimity affects the defendant's substantial rights and amounts to obvious error. *See, e.g.*, *People v. Van Dorsten*, 494 N.W.2d 737, 739 (Mich. 1993) (holding that the failure to give an instruction requiring unanimity on a particular act in no way impeded the defense or denied the defense a fair trial when "[t]he defendant's position was simply that there was

no sexual assault committed," and the parties therefore did not "focus on the specifics of individual penetrations"); *Baker v. State*, 948 N.E.2d 1169, 1179 (Ind. 2011) (holding, when the defense sought only to undermine the alleged witnesses' credibility, that the defendant had not demonstrated that the lack of a specific unanimity instruction "so prejudiced him that he was denied a fair trial"); *see also People v. Cooks*, 521 N.W.2d 275, 279 (Mich. 1994) ("[W]here materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice.").

[¶31]  Here, the essential question for the jury was whether the victim was credible and reliable.  Although a finder of fact may "believe some parts of witness testimony to the exclusion of others, and may combine testimony in any way," *State v. Ferguson*, 2019 ME 10, ¶ 18, 200 A.3d 272 (quotation marks omitted), we do not consider it *reasonably probable* on this record that the jury found the victim's testimony credible as to some of Schooley's sexual assaults against her but not others.  Because we do not conclude that the lack of a specific unanimity instruction affected Schooley's substantial rights, we discern no obvious error.  *See Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

## B.     Prosecutorial Error in Closing Arguments

[¶32]  Schooley contends that the prosecutor improperly argued to the jury that Schooley was not helping to keep the victim safe, that it took "courage" for the victim to testify, that it was "probably traumatic" for the victim to see Schooley, that the victim stood up for herself on the stand and told "her truth," and that "the State believe[d] that the testimony of [the victim] . . . was credible." Schooley contends that the State's vouching for the victim's credibility and its appeals to juror sympathy amount to obvious error, whether independently or cumulatively.

[¶33]  Schooley concedes that because he raised no objection to the State's closing argument, our review of this issue is again for obvious error. *See State v. Hassan*, 2013 ME 98, ¶ 32, 82 A.3d 86.  We "first review instances of alleged prosecutorial error to determine whether error occurred, and, if there was error, . . . will then review the State's comments as a whole, examining the incidents of error both alone and cumulatively." *State v. Warner*, 2023 ME 55, ¶ 14, 301 A.3d 763 (quotation marks omitted).  "When a prosecutor's statement is not sufficient to draw an objection, particularly when viewed in the overall context of the trial, that statement will rarely be found to have created a

reasonable probability that it affected the outcome of the proceeding." *State v. Dolloff*, 2012 ME 130, ¶ 38, 58 A.3d 1032.

[¶34]  "The role of a prosecutor in the courtroom is unique, serving as a minister of justice who is obligated to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence."  *Hanscom*, 2016 ME 184, ¶ 18, 152 A.3d 632 (quotation marks omitted).  Although "a prosecutor may attack credibility by analyzing the evidence and highlighting absurdities or discrepancies in a witness's testimony," *State v. Schmidt*, 2008 ME 151, ¶ 17, 957 A.2d 80 (quotation marks omitted), "the use of the authority or prestige of the prosecutor's office to shore up the credibility of a witness, sometimes called vouching, constitutes prosecutorial error," *State v. Osborn*, 2023 ME 19, ¶ 23, 290 A.3d 558 (quotation marks omitted).

[¶35]  A prosecutor improperly vouches for a witness if the prosecutor conveys a "personal belief in a witness's veracity or implies that the jury should credit the prosecution's evidence simply because the government can be trusted." *Hassan*, 2013 ME 98, ¶ 33, 82 A.3d 86 (alteration and quotation marks omitted); *see also State v. DesRosiers*, 2024 ME 77, ¶ 38, 327 A.3d 64 ("[A]n interjection of a personal belief as to whether a witness lied is generally

error."). "However, an argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching." *Hassan*, 2013 ME 98, ¶ 33, 82 A.3d 86 (quotation marks omitted). "The central question is whether the comment is fairly based on facts in evidence, or improperly reflects a personal belief about the witness's overall credibility." *Id.* (alteration and quotation marks omitted); *see also DesRosiers*, 2024 ME 77, ¶ 37, 327 A.3d 64 (discerning no prosecutorial error when a prosecutor commented that credibility was important and suggested, "there's nothing *in this record* that you've heard today that [could] make you pause about whether or not the victim was being up front or whether or not this trooper was being accurate" (alterations and quotation marks omitted)). The question is whether the prosecutor's comments improperly expressed a personal opinion or "invoke[d] the prestige of the government." *DesRosiers*, 2024 ME 77, ¶ 39, 327 A.3d 64.

[¶36]  In one case, we concluded that there was no error when the prosecutor said, "I would suggest to you that [the victim's] testimony was entirely credible given what she had gone through that night and that you should believe her." *Hassan*, 2013 ME 98, ¶ 32, 82 A.3d 86 (quotation marks omitted). The prosecutor explained that inconsistencies in the victim's story

did not bear on her credibility but rather were understandable given what she had experienced. *Id.* ¶¶ 17, 32. We concluded that the prosecutor's "suggestion" amounted to "an appeal to the jury's common sense, based on facts in evidence, as to why the jury ought to find the victim credible" and held that the statement was not improper as vouching or otherwise. *Id.* ¶ 34 (quotation marks omitted). Similarly, when a prosecutor argued that the victim had consistently, over several years, maintained her position that she was eleven at the time of the first incident, we held that this was permissible commentary on the consistency of a witness's testimony, not prosecutorial error. *State v. Westgate*, 2020 ME 74, ¶¶ 21-22, 234 A.3d 230; *see also State v. Williams*, 2012 ME 63, ¶ 48, 52 A.3d 911 (holding that there was no prosecutorial error when the prosecutor was summarizing testimony and arguing that the jury should consider a witness's poor recollection of dates).

[¶37] We also held that there was no obvious error when the prosecutor "argued in closing, '[The victim's] testimony was very strong. And I suggest that when you recall how he testified here on the stand you will agree that his testimony was very strong.'" *State v. Fahnley*, 2015 ME 82, ¶ 40, 119 A.3d 727 (alteration in original). We held that the error was "not plain because the error is not so clear under existing law that the court and prosecutor were required

to address the matter even in the absence of a timely objection" and added that "given the court's instructions regarding the jury's role in determining the facts, any error did not affect [the defendant]'s substantial rights." *Id.*

[¶38] In contrast, we held that a new trial was required when a prosecutor vouched that the alleged victim and other witnesses were credible and improperly referred to prearrest silence. *State v. Lovejoy*, 2014 ME 48, ¶¶ 9, 32, 89 A.3d 1066. There, although the trial court had issued a curative instruction to the jury that it should disregard the attorneys' stated opinions about witness credibility, "the prosecutor again commented that the victim's testimony was credible during the rebuttal argument." *Id.* ¶¶ 9-11, 32.

[¶39] Here, the question is whether the prosecutor erred in indicating that Schooley "wasn't helping her" in the home; referring to the victim's "courage" in testifying; describing seeing Schooley as being "probably traumatic" for the victim; indicating that the victim "stuck to her story" on the stand; and stating that the victim "really worked to get her truth out." We agree with Schooley that some of the prosecutor's statements, especially the statement in rebuttal that "the State believes that the testimony of [the victim] yesterday was credible," were error.[4] On the other hand, this is not one of the

---

[4] The prosecutor's statement that "the State believes that the testimony . . . was credible" suggests vouching. However, it directly followed the prosecutor's argument that "the State has a high burden

rare instances in which a prosecutor's error, although insufficient to draw an objection, probably affected the outcome when viewed in the overall context of the trial. "The mere existence of a misstatement by a prosecutor at trial, or the occasional verbal misstep, will not necessarily constitute misconduct when viewed in the context of the proceedings." *Dolloff*, 2012 ME 130, ¶ 44, 58 A.3d 1032.

[¶40] Particularly when the court, just before the parties' closing arguments, instructed the jury that the arguments were not evidence and that witness credibility was for the jury to determine, any prosecutorial error in defending the credibility of the State's key witness is not plain error affecting Schooley's substantial rights. *See Fahnley*, 2015 ME 82, ¶ 40, 119 A.3d 727; *Dolloff*, 2012 ME 130, ¶¶ 75-76, 58 A.3d 1032.

The entry is:

Judgment affirmed.

---

here. The State welcomes that burden," and was followed by the argument that the jury should find Schooley guilty if *the jury* believed the victim's testimony. Thus, read in context, even this prosecutorial statement amounts to an argument that the evidence supports the witness's credibility and does not amount to obvious error that the court should have, sua sponte, corrected. *See State v. Farley*, 2024 ME 52, ¶¶ 40-45, 319 A.3d 1080; *see also State v. Hunt*, 2023 ME 26, ¶ 33, 293 A.3d 423 (discerning no obvious error when the prosecutor's argument for the jury to find the defendant guilty "remained focused on the evidence and the jury's role in determining the facts from that evidence").

Jeremy Pratt, Esq. (orally), and Ellen Simmons Esq., Camden, for appellant Chuck D. Schooley

Natasha Irving, District Attorney, and Kent G. Murdick, Asst. Dist. Atty. (orally), Lincoln County District Attorney's Office, Wiscasset, for appellee State of Maine

Lincoln County Unified Criminal Docket docket number CR-2022-385
FOR CLERK REFERENCE ONLY